Argued August 23, affirmed September 23, reconsideration denied
November 13, petition for review denied December 10, 1974

## STATE OF OREGON, *Respondent, v.* FREDERICK ADAMS WILLCUTT (No. 73-2648), *Appellant.*

526 P2d 607

*Michael F. Jarvill,* Eugene, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

This is an appeal of a conviction for criminal activity in drugs in which defendant seeks reversal of the trial court's denial of a motion to suppress evidence. Defendant claims the evidence used at trial was seized pursuant to a warrant which failed to specify with sufficient particularity the premises to be searched, more specifically, that the building described in the search warrant and supporting affidavit is actually a multiple-occupancy structure with subunits and the warrant did not specify the subunits to be searched.

Initially, we note that a multiple-occupancy struc-

ture is not automatically a multiple-unit structure. The essential ingredient regarding specificity requirements for search warrants in this context relates not to the number of occupants but to the existence of separate units or subunits within a structure. The mere fact that a structure contains several residents who are not related to one another does not automatically convert its rooms into "subunits."

■ Where subunits or multiple units exist the general rule is that a search warrant must specify which subunits or units are to be searched. *See, e.g., Silverson v. Olson,* 149 Or 323, 40 P2d 65 (1935); *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), *cert denied* 394 US 951, 89 S Ct 1294, 22 L Ed 2d 487 (1969); *State v. Blackburn/Barber,* 266 Or 28, 511 P2d 381 (1973). However, a recognized exception to the rule occurs where the multi-unit character of the premises was not externally apparent and was not known to the officers applying for and executing the warrant. *See State v. Nearing/Baker,* 16 Or App 30, 517 P2d 308 (1973); *State v. Koberstein,* 8 Or App 307, 493 P2d 176 (1972). Since the search here was pursuant to a warrant, the burden of proof is upon defendant to show the warrant was invalid. *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966); *State v. Sanford,* 245 Or 397, 421 P2d 988 (1966).

■ The pertinent portions of the affidavit, sworn by the State Police Officer Dennis R. Fox, read as follows:

"* * * * *

"That on July 11, 1973 your Affiant observed the Narcotic Drug marihuana in its manicured form at the residence located at 310 Clark Street, Eugene, Lane County, Oregon,

"That the dwelling located at 310 Clark Street, Eugene, Lane County, Oregon, is further described as a yellow, two story, wood frame, dwelling house, located at 310 Clark Street, Eugene, Lane County, Oregon.

"That your Affiant was within the aforementioned residence at approximately 8:00 pm, on June 11, 1973, and did observe the Narcotic drug marihuana being smoked by several persons within the residence, and that the narcotic drug marihuana was seen supplied from a plastic bag within the residence. That furthermore when your Affiant left the residence at 8:10 pm the narcotic Drug marihuana was still present within the residence.

"Based on the above stated information your Affiant has probable cause to believe that the narcotic drug marihuana is currently present on the premises at the address above described.

"* * * * * *"

The pertinent portions of the search warrant read:

"* * * * *

"Information on oath having been this day laid before me that the narcotic drug marihuana is located at 310 Clark St, Eugene, Lane County, Oregon, you are therefore hereby commanded to make immediate search, at any time of the day or night, of the house, premises, and persons therein located at 310 Clark St., Eugene, Lane County, Oregon; the residence identified as a yellow, two story wood frame dwelling house for the narcotic drug marihuana * * *."

Since the officer applying for the warrant had been inside the house, the initial inquiry is whether he should have known the premises were of a multi-unit character. The affiant, Officer Fox, had only been inside the house for ten minutes, long enough to determine that marihuana was on the premises and was being used. Even assuming he had an opportunity

to roam the entire house in those ten minutes, the evidence indicates he should not reasonably have been on notice that the house might be divided into subunits. In the basement were two bedrooms, a bathroom with a shower facility, a little room with a sink, and a propane stove. The main floor of the house consisted of a living room, a bedroom, a bathroom, a kitchen, and connecting hallways. The top floor consisted of two more bedrooms and a central stairwell and hallway. The bathrooms, living room, kitchen and the common hallways were open to all occupants of the house. None of the separate rooms were lockable by key. The door to defendant's room bore a label with his nickname, "Snooze," upon it, but there were no signs, numbers, or letters on any of the other doors. The occupants of the house normally did not enter each other's bedroom without knocking if the door was closed, or at all if the person was away. However, this is a subjective factor, apparent only to those persons so apprised by the residents; it is not an objective factor available to an observer. The objective characteristics would indicate the structure was a house being shared by several persons rather than a multiple unit or subunit building.

The next issue involves defendant's claim that the officers should have been on notice that they were entering a multi-unit building. Seven law enforcement officers, including Officer Fox, arrived at 310 Clark Street to serve the search warrant at approximately 11:10 p.m., June 11, 1973. No one was home at the residence when the officers arrived and forced entry was made through a front door.

The structure in question had been under police surveillance beginning in late February or early March 1973. The police had made some effort to determine

who lived on the premises by checking with the local post office and utilities, including the telephone company. As a result of this effort, the police determined that several people at least received their mail at the address, 310 Clark Street, but were not certain whether those persons actually lived there. The structure looked like a regular house and had the marking "310" on the exterior. It was a two-story house with a basement. One mailbox was used by all occupants. The mailbox was situated on a stairway leading from the driveway to the front door of the structure, and bore a three-by-five inch card with the names of six or seven occupants of the premises. The driveway was the regular approach to the house. Defendant's witnesses presented conflicting testimony as to whether a sign, visible at best from the foot of the driveway if one were "looking for it," was placed above an entrance to the basement of the structure. This sign is claimed by defendant to indicate that part of the basement was an apartment. The witnesses were not sure whether the sign was up the day of the search; they differed as to the color of the sign and as to whether it read "Apartment A" or "Apartment B." At best, evidence of the existence or visibility of the sign was inconclusive and the issue was resolved contrary to defendant's contention by the trial court. One of the searching officers, who had been watching the structure for a few days prior to the search, testified he had not noticed any designation over the basement door. Testimony also indicated that the mailbox with six names on the three-by-five inch card thereon did not draw the attention of the officers executing the warrant. Thus there was evidence supporting the trial court's conclusion that defendant failed to meet his burden of proving that the officers should have known they were entering what defendant

claimed to be a multi-unit structure. *State v. Fisher,* 5 Or App 483, 485-86, 484 P2d 864 (1971).

In summary, whether or not the residents of 310 Clark Street subjectively considered their rooms to be a series of subunits, Officer Fox, who sought the search warrant, and the other officers who executed the warrant did not know and had no reason to know that the structure was anything other than a single dwelling house with several residents.

The trial court's denial of the motion to suppress evidence is affirmed.