# STATE OF OREGON,
*Respondent,*

*v.*

# KEVIN MICHAEL DEVINE,
*Appellant.*

## (10-86-05350; CA A44327)

756 P2d 33

Shaun S. McCrea, Eugene, argued the cause and submitted the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

ROSSMAN, J.

Joseph, C. J., dissenting.

**ROSSMAN, J.**

In a trial on stipulated facts, defendant was found guilty of unlawful possession of a controlled substance. ORS 475.992. He appeals an order denying his motion to suppress evidence seized by police during a search of his apartment. The issue is whether the apartment, a converted section of a garage, was within the scope of the search warrant. We affirm.

On August 14, 1985, police obtained a warrant to search the premises at 442 W. Centennial in Springfield, further described "as a single story, wood framed dwelling, white and black in color, located on the north side of W. Centennial, Springfield, Lane County, Oregon, with the numbers 442 being located on the residence." The supporting affidavit included information provided by an informant who claimed that he had observed defendant "processing a large methamphetamine reaction" at his residence on August 11. It stated that the affiant and another officer had driven the informant by defendant's purported address for identification. The informant pointed out the premises described in the warrant. The affiant later checked the police computer and confirmed that defendant listed 442 W. Centennial as his address.

Defendant acknowledges that the warrant is drawn with sufficient particularity as required by the Fourth Amendment and Article I, section 9. He argues, however, that the officers executing the warrant went beyond the scope of the warrant when they searched his garage apartment. He contends that the police should have known that his garage apartment was a separate living quarters by the number 442 1/2 which appeared above the door and the fact that the garage was white and had aluminum siding, unlike the description in the warrant of a black and white wood framed dwelling.

The trial court found that the warrant "was lawfully issued upon probable cause for the search of the premises located at 442 W. Centennial." It further found that defendant's living quarters were within those premises and that "the police officers objectively and reasonably believed the entire premises located at 442 W. Centennial, including defendant's living quarters designated as 442 1/2 W. Centennial, was a single family dwelling."

Reasonableness is the test for searches under both

the Fourth Amendment and Article I, section 9. A warrant to search "premises" is valid for all portions of the described buildings *and* those appurtenant structures which reasonably appear to be part of those premises. Generally, if the premises to be searched are identified by street number, the search is not limited to the dwelling house but may also extend to the garage and other structures deemed to be within the curtilage. 2 La Fave, *Search and Seizure,* 312 § 4.10(a) (1987). We focus on the *objective* factors available to the officers at the time when they executed the warrant. *See State v. Willcutt,* 19 Or App 93, 97, 526 P2d 607, *rev den* (1974); *see also, State v. Coatney,* 44 Or App 13, 19, 604 P2d 1269, *rev den* (1980).[1]

The "premises" at 442 W. Centennial consisted of a house and garage. Although not sharing a common roof, the structures were apparently quite close to each other with a deck between them. There is a driveway beside the house from the street to the garage. The garage had three outside doors, an overhead door opening from the garage area to the alley, a sliding door from the garage area to the back yard of the main residence and a door from defendant's apartment area, opening toward the street. The small numbers 442 1/2 appeared above that door. There was one mailbox at the main house. The photographs of the premises in the record show what is apparently a single-family dwelling and a garage. We agree with the state's assessment that the objective characteristics would indicate that the premises at 442 W. Centennial consisted of a single residence with a garage.

The officer executing the warrant, Spencer, testified that he had driven by the premises before and believed it to be comprised of a house with a garage behind it. He also testified that he at no time had any indication that the garage was, in fact, a separate residence from the main house. He testified that he never noticed the numbers above the garage door which opened into defendant's apartment either when driving by or when executing the warrant.

When the police executed the warrant, they first forcibly entered the structure bearing the number 442. Spencer

---

[1] In *Willcutt,* the Supreme Court examined the objective characteristics apparent to the officers applying for and executing the warrant to determine not only whether the warrant was drawn with sufficient particularity but also whether the search was within the limits of the warrant.

read defendant's grandmother the warrant and gave her a copy; nothing was seized. The officers then proceeded to the garage structure and forcibly entered what turned out to be defendant's apartment. The numbers above defendant's door were small, such that a reasonable officer making a forced entry under a warrant for the "premises" would not have noticed them. Moreover, there was no reason for the officers to be looking for house numbers when by all reasonable appearances the building they were entering looked like an ordinary garage. It is also reasonable that in the commotion of making the entry the officers would not distinguish between the white wood siding, mentioned in the warrant, and the white aluminum siding on the garage.

The defendant and the dissent argue that, even if the officers were initially reasonably unaware that the garage contained a separate dwelling, as soon as they stepped inside they were chargeable with knowing that they had entered a separate dwelling. However, there is nothing in the record indicating that, when the officers forcibly entered the garage, they saw facts which put them on notice, or reasonably should have put them on notice, that they were in a separate residence.

Defendant's grandmother testified that the apartment consisted of two rooms, including a kitchen and a bathroom with a toilet and shower. Even if the record disclosed that the officers first noticed a bed and a sink, that would not necessarily have alerted them to the fact that they had entered a separate dwelling unit not covered by the warrant. That there was more living space in the garage, in addition to the main house, does not by itself render the living quarters in the garage a separate dwelling unit requiring a separate warrant.

Defendant's presentation, at the suppression hearing, of additional facts which might support a conclusion that the garage contained a separate residence outside the scope of the warrant, *i.e.*, that defendant rented a portion of the garage, had a key which locked the doors to it and received mail at the main house addressed both to 442 and 442 1/2 W. Centennial, does not change the information *objectively* available to the officers on the scene.

The external indicia did not indicate that the "premises" consisted of more than one residence. The officers did

not become aware of any additional facts, when they executed the warrant, sufficient to cause a reasonable person to believe that there were actually two separate dwellings. Therefore, the search of the garage was lawful in executing the warrant.

Affirmed.

**JOSEPH, C. J.,** dissenting.

It is not unheard of for two judges who are working with the same constitution, the same statutes and the same case law to come to diametrically opposite results. That can happen for a variety of reasons, including, but not exclusively, that each begins the analysis differently. This may be one of those instances. The majority, after briefly reviewing what it views as the legal fundamentals relating to testing the validity of a search by the scope of the warrant, immediately proceeds to a discussion of the "objective characteristics [of] the premises at 442 W. Centennial." 91 Or App at 411. In my view, that is not the proper analytical path. I would begin with the warrant itself and, to some extent, the underlying affidavit supporting it.

In Oregon, the Fourth Amendment and Article I, section 9, are implemented by ORS 133.565. Subsection (2) of that section provides, in relevant part:

"(2)   The warrant shall state, or describe with particularity:

"(a)   The identity of the judge issuing the warrant and the date the warrant was issued;

"(b)   The name of the person to be searched, or the location and designation of *the premises or places* to be searched;

"(c)   The things constituting the object of the search and authorized to be seized * * *."

The warrant here, after reciting the *things* that it covers, continues with an assertion that those things

"ARE CURRENTLY LOCATED WITHIN 442 W. Centennial, Springfield, Lane County Oregon [,]

"FURTHER DESCRIBED AS A single-story, wood-framed dwelling, white and black in color, located on the north side of W. Centennial, Sprinfelld [sic], Lane County Oregon, with the numbers "442" being located on the residence.

"YOU ARE THEREFORE HEREBY COMMANDED TO SEARCH THE ABOVE DESCRIBED premises

"FOR THE ABOVE DESCRIBED EVIDENCE * * *."

The words that are all in capital letters are part of the printed form; the rest of the words are handwritten. Surely, that warrant describes the "premises" "with particularity." The source for the particularity is these recitals in the affidavit:

"That among the subjects that Hicks told me about is [defendant]. That Hicks told me that [defendant] is an extremely active dealer of the controlled substance methamphetamine * * *. He advised me that he went to [defendant's] residence last Sunday night * * * and that he contacted [defendant] there. Hicks told me that while he was at [defendant's] residence, he observed [defendant] to be involved in processing a large methamphetamine reaction. * * * Hicks said that he [had] accompanied a subject * * * to [defendant's] residence [some time ago] and that [the subject] went in * * * and * * * came out with methamphetamine. * * *.

"That Hicks went with a [detective] and I [sic] and pointed out [defendant's] residence which is located at 442 W. Centennial, Springfield, Lane County, Oregon. That I subsequently confirmed that [defendant] shows this as his most current address by means of the police computer system.

"That while we went by the residence, I remained out of view and [the detective] described the residence to me as follows: A single-story, wood-framed dwelling, white and black in color, located on the north side of W. Centennial, Springfield, Lane County, Oregon, with the numbers '442' being located on the residence.

"Based upon the above-described information, your affiant has probable cause to believe and does believe that evidence of the crimes * * * are currently located within the residence located at 442 W. Centennial, Springfield, Lane County, Oregon which is further described above.

"Therefore your affiant respectfully requests that this court issue its warrant for the above-described residence *and its curtilage* for the above-described evidence." (Emphasis supplied.)

The description of the "premises" reads as it does because the officers believed that the objects to be searched for and seized were located in a black and white house at a particular address and that the house was the residence of defendant.

There are historical, political and social reasons for the requirement of particularity. In discussing the question of whether a warrant was sufficiently definite, the Supreme Court said:

> "The description must be sufficiently clear so that the property to be searched is recognizable from other neighboring properties. [Citations omitted.] If, however, a warrant purporting to authorize a search is sufficiently ambiguous that it is impossible to identify with a reasonable degree of certainty, the particular premises authorized to be searched, the warrant may not be executed and any search pursuant to it is illegal, whether of the premises actually intended or not, because of the danger that the privacy of unauthorized premises will be invaded." *State v. Blackburn/Barber,* 266 Or 28, 35, 511 P2d 381 (1973).

*See Steele v. United States,* 267 US 498, 45 S Ct 414, 69 L Ed 757 (1925). In a similar context, the Supreme Court described the purpose of the particularity requirement to be

> "to narrow the scope of the search to those premises for which a magistrate has found probable cause to authorize a search. When the warrant designates the premises by means that will properly limit the search, there is little risk that other premises will be subjected to unreasonable examination. * * * The relevant inquiry is whether a police officer can execute the warrant without straying into premises which he has no authority to enter." *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), *cert den* 394 US 951 (1969).

Under *Blackburn/Barber* and *Cortman,* the warrant here is certainly sufficiently specific. However, particularity is not the issue; the issue is the extent to which the particularity of the description of the premises *limits* the executing officers' authority to search.

Given the recent abundance of search and seizure law, it is surprising that there is so little Oregon authority about the extent to which a particular description in a warrant is or is not a limitation. In *State v. Koberstein,* 8 Or App 307, 493 P2d 176 (1972), we sustained a search of an apartment in a two-unit building, even though the warrant and the underlying affidavit simply described the premises as a "residence located at" a particular address. Again, as in the cases cited above, the actual challenge was whether the warrant described

with sufficient particularly the place to be searched. However, we said:

> "As a general proposition, the rule is that a search warrant directed against a multiple-occupancy structure will usually be held invalid if it fails to describe the particular sub-unit to be searched. * * * In *Siverson* [*v. Olson,* 149 Or 323, 40 P2d 65 (1935)], the Oregon Supreme Court, in holding insufficient the description of the place to be searched, stated:
>
>> " 'It appears from defendants' answer, and from the testimony * * * that there were at least two buildings upon the premises designated as No. 309 East Hancock street in Portland; and that these two buildings were occupied by different persons. It also appears from the testimony that the residence at said street number was occupied by two families, Mr. Porter and his mother residing in the upper part of the house and plaintiff and his wife occupying the rest of the residence. The description in the affidavit is, "a certain building situated on the premises occupied by and under the control of said John Doe * * *." Under the facts of this case, such a description is insufficient [citations omitted].' 149 Or at 328.
>
> "* * * * *
>
> "* * * In the case at bar, there was no evidence whatsoever indicating that the police knew or should have known there were two living units in the house. Indeed, from the evidence, one could reasonably conclude that from all outward appearances the structure was a single unit dwelling. Not only was there nothing to indicate that the structure was occupied by any party other than the two defendants, but when Mr. Koberstein was standing on the porch and was asked by one of the officers who lived in the house, he replied that he was the one who lived there.
>
> "Thus, there was nothing to put the officers on notice of the necessity of securing a particular description of the place to be searched. * * * At no time during the hearing was it shown by defendants that the authorities actually knew that this dwelling contained two living units rather than one at the time they sought or served the search warrant. * * *." 8 Or App 313.

Although *Koberstein* tends to mix the related, but distinct, problems of sufficiency of the description of the premises with the question of limitation of the scope of a warranted search, it seems fairly clear that the court looked at

the description as a limitation that could itself be limited by knowledge obtained during the process of executing the warrant. That understanding clearly underlies the holding in *State v. Willcut,* 19 Or App 93, 526 P2d 607, *rev den* (1974), where the warrant described the place to be searched by an address and the words "a yellow, two story wood frame dwelling house." The building in fact was occupied by several people living more or less separately. We said, 19 Or App at 99:

> "[W]hether or not the residents * * * subjectively considered their rooms to be a series of subunits, [the officer] who sought the search warrant, and the other officers who executed the warrant[,] did not know and had no reason to know that the structure was anything other than a single dwelling house with several residents."

That quotation is a source of the majority's more or less correct, but misapplied, rule that the focus of our review is on the objective factors available to the officers. *See also State v. Coatney,* 44 Or App 13, 19, 604 P2d 1269 (1980).

Where the majority goes wrong, first, is in its allocation of the burden of proof. Because the search was pursuant to a warrant, the burden would be on the defendant *if* he were challenging the validity of the warrant. *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966); *State v. Sanford,* 245 Or 397, 421 P2d 988 (1966). However, that is not what defendant is doing. His position is that the warrant is valid, but what the police did exceeded the authority granted them by the warrant. I know of no authority that places the burden on the subject of a search warrant to prove that the officers violated it. I would think that the burden ought to run the other way, because the warrant is both a grant of authority that the police otherwise constitutionally lack and a limitation on that authority. In the absence of controlling authority to the contrary, I would hold, if the issue needed to be decided, that the burden is, at least at the outset of a hearing, on the police to prove that what they did was within the authority of the warrant.

The second place where the majority goes wrong, irrespective of the burden of proof, is by giving the police the benefit of their purported ignorance, lack of knowledge or failure to observe. It may well be true that, *viewed from the outside from the street,* all indications were that the premises at 442 W. Centennial consisted of a single residence with a

garage, as the majority would have it. That has nothing to do with the controlling issue.

It may also be true that the officers executing the warrant never noticed the number 442-1/2 above the apartment door. The fact remains that it was there to be seen. It may well be that the officer making the affidavit for the search warrant and the officers executing the search warrant confirmed that the police records showed 442 W. Centennial as the address listed by the defendant. However, it is quite another thing to conclude that the record supports the trial court's finding that the officers objectively and reasonably believed that the entire premises, including defendant's apartment was a single-family dwelling. That fails to distinguish between what was objective and reasonable *before* the officers got to the location and what was objective and reasonable after they got into the building (and curtilage) described in the warrant.

Although *Maryland v. Garrison,* 480 US ___, 107 S Ct 1013, 94 L Ed 2d 72 (1987), is not Oregon constitutional authority, it is true that the constitutionality of the officers' conduct must be judged in the light of the information available to them when they acted. Unfortunately, the majority refuses to acknowledge that, under the standards suggested by the Oregon cases, it is not enough to conclude that the officers' failure to realize that they had in fact entered a separate apartment was objectively understandable and reasonable. The officers are chargeable with knowing what they ought to have known, including the objective facts and the subjective implications of or inferences from those facts. They had searched the house where the informant had purportedly made his observations and had found nothing of the sort described in the affidavit and nothing to indicate any activity of the sort described by the informant.

They had left that building, and they had entered an area that was recognizable as a garage and found nothing. They then opened a side door over which there was a number different from the one on the premises described in the warrant and entered an area that was not physically part of the house and which was defendant's living quarters. The building in which those quarters were located was metal (not wood, as described in the search warrant); it was white, not white and

black; it had the numbers 442-1/2 above the door; it was not structurally attached to the house bearing the numbers 442; it had a door that locked separately; and, although it was connected to the garage by a common wall, it was separated from it by another closed door.

Even if, by a stretch of the imagination, the police could be credited for being unaware of the separate nature of the apartment when they opened the door, as soon as they looked inside they could have seen that it was a self-contained unit. Given the facts that Oregon has not adopted the so-called good-faith test of *Maryland v. Garrison, supra,* and that the police are chargeable with knowing that which was within their ability reasonably to know, we ought to hold that they exceeded the scope of the search warrant.

The state makes absolutely no contention that the officers saw any contraband from a position where they were entitled to be within the scope of the warrant. Therefore, it matters not one whit whether we conclude that they were at least entitled to open the door to see what was on the other side in order to determine whether they were still within that scope.[1]

Needless to say, I dissent.

Buttler, Newman and Graber, Judges, join in this dissent.

---

[1] The state does urge an exigent circumstances excuse, which the majority properly ignores.