Argued and submitted October 4, 1988, the judgment of the circuit court and the decision of the Court of Appeals are reversed and remanded to circuit court for further proceedings February 14, 1989

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## KEVIN MICHAEL DEVINE,
*Petitioner on Review.*

(TC 10-86-05350; CA A44327; SC S35354)

768 P2d 913

Shaun S. McCrea, Eugene, filed the petition and argued the cause on behalf of the petitioner on review.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause on behalf of the respondent on review.

Before Peterson, Chief Justice, and Linde, Campbell,** Carson, Jones and Gillette, Justices.

GILLETTE, J.

---

** Campbell, J., retired December 31, 1988.

## GILLETTE, J.

The issue in this case is whether a search warrant authorizing police officers to search a house also authorizes them to search an apartment located in a separate building on the same lot as the described house. The trial court held that the search of such an apartment was proper, and denied a motion to suppress evidence found in the search. The Court of Appeals affirmed. *State v. Devine,* 91 Or App 408, 756 P2d 33 (1988). We reverse the decisions of the Court of Appeals and the circuit court.

The search warrant stated that evidence of various crimes was

"CURRENTLY LOCATED WITHIN 442 W. CENTENNIAL, SPRINGFIELD, LANE COUNTY, OREGON. FURTHER DESCRIBED AS A SINGLE-STORY, WOOD-FRAMED DWELLING, WHITE AND BLACK IN COLOR, LOCATED ON THE NORTH SIDE OF W. CENTENNIAL, SPRINGFIELD, LANE COUNTY OREGON, WITH THE NUMBERS '442' BEING LOCATED ON THE RESIDENCE."

The warrant then commanded any police officer "TO SEARCH THE ABOVE DESCRIBED PREMISES."

Pursuant to this warrant, officers proceeded to 442 West Centennial, a white and black wood-framed house on the north side of West Centennial with the number 442 on the front, and searched the house. No evidence of the kind described was located within the house. The officers then discovered a living area located in a garage behind the house. The garage apartment and the house were not attached. The apartment had a separate, lockable entrance and the number "442½" over the door. The exterior of the apartment and garage were white, rather than white and black. The officers searched the apartment, where they discovered some evidence of possession of a controlled substance. The present criminal proceeding followed.

Article, I, section 9, of the Oregon Constitution requires warrants to particularly describe the place to be searched. The purpose of this requirement is to minimize the risk of intrusion into premises other than those as to which a magistrate has found probable cause to search. *State v. Cort-*

*man,* 251 Or 566, 446 P2d 681 (1968). Thus, officers may search only a single residence in a multiple-residence building or property if the warrant described only one such residence. *State v. Blackburn/Barber,* 266 Or 28, 35-37, 511 P2d 381 (1973); *see also Siverson v. Olson,* 149 Or 323, 40 P2d 65 (1935).

■ Although never explicitly stated, *Blackburn/Barber* and *Siverson* imply that if a warrant does not state how many residences may be searched, the warrant only authorizes the search of one residence. The distinction between this case and *Blackburn/Barber* is that here the officers thought they were going to a single-family residence. It was not until they had searched the house that they realized that the garage contained a separate living area.

■ As the facts have been argued to us, it seems reasonably clear that the house and the apartment were two separate residences. The testimony was that the apartment was a self-contained residence; that it included a kitchen and a bathroom; that it was in a detached building, with what appeared to be a separate street number over the entrance door; that the apartment was used as a separate household; that it had a separate telephone line; and that the occupant of the apartment paid rent to the owner of the house. All of these factors (or any of a dozen lesser combinations of them) permit (if they do not compel) the conclusion that the apartment constituted a separate residence.

But, in spite of the fact that a very complete record was made concerning these facts, we do not know which ones (if any) the trial court accepted and which (if any) the trial court rejected. The court's complete findings in this case consisted of the following recitation:

"(1) The search warrant was lawfully issued upon probable cause for the search of the premises located at 442 W. Centennial Blvd., Springfield, Lane County, Oregon.

"(2) The defendant's living quarters were within the premises of 442 W. Centennial Blvd., Springfield, Lane County, Oregon[,] and were lawfully searched pursuant to the search warrant issued for those premises.

"(3) The police officers objectively and reasonably believed the entire premises located at 442 W. Centennial, including the defendant's living quarters designated as 442 ½ W. Centennial, was a single family dwelling.

"For these reasons, and the reasons stated in the record, it is therefore ordered that the Defendant's Motion to Suppress is hereby DENIED."

We cannot determine from the foregoing whether the trial judge believed that defendant's living quarters were separate and under his exclusive control, on the one hand, or were simply a detached but nonetheless integral part of the living quarters of the main house. The difference is pivotal.

The arguments of the parties to the Court of Appeals and to this court have turned on factual questions such as whether the police officers executing the warrant saw or should have seen the numbers "442 ½" above the door of the separate living area. From the answer to this and similar questions, the parties then argue the merits of an "objective" versus a "subjective" test of the reasonableness of the officers' actions under Article I, section 9, of the Oregon Constitution. We think both sides miss the point.

The officer's "good faith" or "reasonableness" had nothing to do with the inquiry. If the defendant's living quarters really were "separate"—*i.e.,* if defendant really was maintaining a separate household in the space, subject only to the homeowner's right to enter in emergencies—then those separate premises were not covered by the search warrant. This is the clear lesson of cases like *State v. Blackburn/Barber, supra.*

In *State v. Blackburn/Barber, supra,* police had a warrant to search an apartment in the basement of a McMinnville residence. The apartment was described as having the number "2" and the word "ECURB" on the door. Upon arrival, the officers found four separate apartments—one having the number "2" on the door and another having the word "ECURB" on the door. The officers searched both apartments (and the two others, for good measure). This court held that "[t]here was no authority to search any part of the premises except the apartment with ECURB on the door." *Id.* at 36. This was true even though the warrant contained some authorization that reasonably might have been understood to justify a search of apartment "2" as well. A warrant authorizes the search of a particular place. That authorization does not extend to other places, even when they are somewhat like the place whose search is authorized and their existence was not anticipated by the officers.

*Siverson v. Olson, supra,* is also pertinent. In that case, which involved an action for damages in trespass, a District Judge in Multnomah County had issued a search warrant authorizing a search for intoxicating liquors on premises described as 309 E. Hancock street in Portland, Multnomah County, Oregon. There proved to be two buildings at that address. One of them, a residence, was occupied by the Siversons on the ground floor and the Porters on the second floor. There is no suggestion that the fact of bifurcated occupation of the house could have been discovered ahead of time. A police officer searched the whole house. This court held that the warrant was not valid to authorize a search of the entire premises and that an action against the policeman would therefore lie. *Id.* at 327-29.

■ We think both of these cases stand at least implicitly for the proposition that a warrant for the search of certain premises applies only to those premises and that if, at some time during the search, separate premises are encountered and searched, the search of the latter is unauthorized without regard to whether the officers could have anticipated ahead of time that they would encounter those separate premises. Those implicit holdings we now make explicit under Article I, section 9, of the Oregon Constitution. *See also State v. Carsey,* 295 Or 32, 664 P2d 1085 (1983) (decided under federal constitution; reasonableness or good faith no justification for police entry into bedroom of defendant in grandmother's house, although grandmother had legal custody of defendant and had given permission for the entry, where bedroom was in fact maintained as separate and exclusive room of defendant).

The warrant in this case authorized only entry into the premises at 442 W. Centennial, a house fully described in the warrant. It did not purport to authorize entry into some other, separately maintained premises, whether inside the house or elsewhere. Absent some justification other than the warrant (and there is no basis in the present record for any other justification), a search of separate premises would have been improper.

As already noted, our holding today proceeds from a premise justified by the evidence but not yet validated by appropriate findings of fact by the trial court. The case must

be remanded to the trial court for further findings relating to the nature of defendant's living quarters.

The judgment of the circuit court and the decision of the Court of Appeals are reversed. The case is remanded to the circuit court for further proceedings consistent with this opinion.