Argued and submitted March 19, reversed and remanded for new trial
October 17, 1990

## STATE OF OREGON,
*Respondent,*

*v.*

## ERNEST RICHARD MARTINI,
*Appellant.*

(88CR2269; CA A61134)

799 P2d 184

Kent W. Day, North Bend, argued the cause and filed the brief for appellant.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

Defendant appeals his conviction on two counts of possession of a controlled substance, ORS 475.992(4), assigning error to the denial of his motion to suppress evidence seized during the search of his travel trailer. We reverse and remand.

On November 14, 1988, Officer Lucas obtained a warrant to search defendant's person and the premises described as:

> "The Residence, outbuildings, and curtilage at 609 Grinnell Avenue, Coos Bay, Coos County, Oregon, commonly known as the Gypsy Jokers[1] Clubhouse and being a wood, two story building being partially white in color with black trim"

for "fictitious documents" and false identification allegedly used to obtain an Oregon driver's license.

In his supporting affidavit, Lucas described defendant's lengthy history of using aliases and Lucas' investigation of defendant regarding the crime of false application. Lucas obtained a description of the premises when he drove by it on November 10, 1988. He testified that he could not see any trailers on the property from the road. However, after obtaining the warrant, and a couple of days before executing the warrant, he flew over the property and obtained aerial photographs for use by the entry team. In addition to the clubhouse and several outbuildings, those pictures clearly show three trailers, ranging in length from 12 to 26 feet.

Lucas executed the warrant on the morning of November, 18, 1988, accompanied by 14 other officers. On their arrival, they found four or five trailers located on the property. Twenty-five feet south of the described clubhouse was a travel trailer, approximately 22 feet in length, with a pit bull terrier tied to the door. An electrical extension cord ran from it to the clubhouse. After defendant identified the trailer as his and restrained the dog, Lucas and two other officers entered it.[2] They thoroughly searched defendant's trailer,

---

[1] The Gypsy Jokers is a motorcycle club with a chapter in Coos Bay. Defendant was past president of the Seattle chapter and a "prospect" of the Coos Bay chapter.

[2] It had a bathroom, stove and refrigerator, although it did not appear that anyone cooked or ate there. Lucas testified that the bathroom was "filled up with junk and couldn't be used." That information was not obtained until *after* the officers entered the trailer.

seizing 1.23 grams of methadrine, 3.06 ounces of marijuana, drug paraphernalia, a "recipe" for manufacturing methadrine and a sawed-off shotgun. Other officers searched some of the other trailers.

Defendant contends that the search was unlawful in two respects: (1) The supporting affidavit failed to establish probable cause, and (2) the scope of the search exceeded that authorized by the warrant.[3] We will assume, without deciding, that the affidavit established probable cause, but we conclude that the search exceeded the scope of the warrant.

The issue is whether a search warrant authorizing police officers to search a particularly described clubhouse, outbuildings and curtilage also authorizes them to search a travel trailer located on the same property. The state contends that defendant's travel trailer is an "outbuilding" and that, therefore, the search was authorized by the warrant.[4] We disagree. An "outbuilding" is a "building (such as a stable or smokehouse) separate from but accessory to a main house." *Webster's Third New International Dictionary* 1601 (1971). It would be questionable to say that a travel trailer is a "building" and, on this record, it would be even more questionable to say that the trailer was an accessory to the clubhouse. From its outward appearance, the trailer was a place where a person sleeps and eats, at least temporarily, and was designed to be moved from place to place. At least two days before the warrant was executed, Lucas learned that there were several

---

[3] Defendant confuses two distinct issues in arguing that the search exceeded the scope of the search warrant because the warrant was ambiguous to the degree that it was impossible to identify the particular premises to be searched. The warrant was not ambiguous; it particularly described the premises to be searched as the "[r]esidence, outbuildings, and curtilage" located at 609 Grinnell Avenue. We focus, instead, on the "extent to which the particularity of the description of the premises *limits* the executing officers' authority to search." *State v. Devine,* 91 Or App 408, 415, 756 P2d 33 (1988) (Joseph, C. J., dissenting), *reversed* 307 Or 341, 768 P2d 913 (1989). (Emphasis in original.)

[4] The trial court apparently agreed with the state:

"[The] only thing [that the police] really had to go on was [defendant's] purported residence that he listed on his application, and they acquired a Search Warrant for that address, plus the outbuildings. * * * So I have no problem with the scope of the search."

The court, however, overlooked the fact that the police knew, at least two days before the warrant was executed, that there were several travel trailers on the property.

The state does not argue that the search of the trailer can be justified as its having been within the curtilage.

travel trailers on the clubhouse property, yet he made no effort to obtain a warrant to search one that belonged to defendant. He could have and should have done so.

In *State v. Devine,* 307 Or 341, 768 P2d 913 (1989), the court held that, when a warrant identifies one address and there appears to be more than one *separately maintained residence* at that address, the warrant authorizes only a search of the residence identified in the warrant. Here, Lucas knew in advance that there were several travel trailers on the property and that the warrant did not describe them, even generally. As in *Devine,* it seemed reasonably clear that the clubhouse and travel trailer were separate residences. The dissent would distinguish this case from *Devine,* because the trailer did not have an address separate from the one for the clubhouse and did not have a separate mailbox or driveway. Of course it did not; it is designed to be moved along the highway, which would militate strongly against its being an accessory to the clubhouse. If the extension cord running between the trailer and clubhouse indicates anything, it is that whoever was living in the trailer got electricity from the clubhouse. The trial court's only comment about the scope of the search was his conclusion that he had "no problem" with it.

The dissent's reliance on *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), to support implicit findings that the search was within the scope of the warrant is misplaced. Whether the description of the place or places to be searched is sufficient under Article I, section 9, is of constitutional import, and we are not bound by the trial court's conclusion. *State v. Warner,* 284 Or 147, 585 P2d 681 (1978).

Section 9[5] requires that the warrant particularly describe the place to be searched; so does ORS 133.565(2)(b).[6]

---

[5] Or Const, Art I, § 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[6] ORS 133.565(2)(b) provides:

"(2) The warrant shall state, or describe with particularity:

"* * * * *

"(b) The name of the person to be searched, or the location and designation of the premises or places to be searched[.]"

In *State v. Massey,* 40 Or App 211, 214, 594 P2d 1274, *rev den* 287 Or 409 (1979), we said:

"The requirement that a warrant specifically describe the place to be searched is intended to assure that the state may enter only the place intended by judicial discretion to be subject to official intrusion and to protect unintended premises from intrusion. * * * The requirement that the warrant specifically describe the property to be seized is intended to guide the executing officer toward what is judicially intended and away from what is not. The objective is that the search be as precise as the circumstances allow and that undue rummaging be avoided."

Because the search here was not as precise as the circumstances allowed, the police exceeded the scope of the search authorized by the warrant.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

The majority's decision to reverse this case suffers from two failings. First, contrary to the rule in *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), it ignores the implicit findings of the trial court. Second, even if *Ball v. Gladden* does not apply, the decision does not square with the facts. Accordingly, I dissent.

Noting that the police "acquired a Search Warrant for the address that defendant listed on his application, plus the outbuildings," the trial court found "no problem with the scope of the search." Under *Ball v. Gladden, supra,* we are bound by the trial court's findings, if there is evidence to support them. Here, there is ample evidence to support the court's implicit finding that the trailer was either an extension of the clubhouse or an outbuilding.

This is not a case like *State v. Devine,* 307 Or 341, 344, 768 P2d 913 (1989), where

"it seem[ed] reasonably clear that the house and the apartment were two separate residences. The testimony was that the apartment was a self-contained residence; that it included a kitchen and a bathroom; that it was in a detached building, with what appeared to be a separate street number over the entrance door; that the apartment was used as a separate household; that it had a separate telephone line; and that the

> occupant of the apartment paid rent to the owner of the
> house."

By contrast, here, the trailer did not have an address separate from the one for which the warrant was issued; in fact, defendant listed "609 Grinnell Avenue," the address for which the warrant was issued, as his residence. The trailer did not have a separate mailbox or driveway; it did not have a separate power supply, but was connected to the main house by an extension cord;[1] and, although it did have a bathroom and kitchen, the bathroom was so filled with "junk" that it was unusable, and the kitchen did not appear to have been recently used. The point is that, at most, the trailer could have been used as an extra bedroom. If so, it was merely a detached but integral part of the main clubhouse. If not, it was being used as an outbuilding. Either way, the trial court was correct in determining that it was within the scope of the warrant.

The majority's suggestion that a trailer cannot be an outbuilding is nonsense. An outbuilding is "[s]omething used in connection with a main building." *Black's Law Dictionary* 1254 (4th ed 1968). The trailer in this case fits that description. More to the point, if a trailer may be used as a residence, it certainly may be used as an outbuilding. In any event, the facts demonstrate that the trailer was not a separate residence.

Because the trial court should be affirmed, I respectfully dissent.

---

[1] The necessity of the extension cord supports the conclusion that the trailer did not serve as a separate residence, but merely as an appendage to the clubhouse.