Argued and submitted December 4, 1992, affirmed August 25, 1993

# STATE OF OREGON,
*Respondent,*

*v.*

# DONALD SAMUEL JOST,
*Appellant.*

(911510; CA A72300 (Control))

# STATE OF OREGON,
*Respondent,*

*v.*

# OREGON-WASHINGTON RECOVERY CO., INC.,
*Appellant.*

(911504; CA A72456)
(Cases Consolidated)

858 P2d 881

Phillip M. Margolin, Portland, argued the cause for appellants. With him on the brief was Margolin & Margolin, Portland.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

De MUNIZ, J.

---

* Leeson, J., *vice* Buttler, J., retired.

## De MUNIZ, J.

Defendant Jost owns defendant Oregon-Washington Recovery Co. Inc. (OWR), a company that repossesses automobiles. In connection with Jost's conduct in repossessing a car, he and OWR were charged with burglary in the second degree, theft in the first degree and unauthorized use of a vehicle. ORS 164.215; ORS 164.055; ORS 164.135. The court granted Jost's motion for judgment of acquittal on the burglary charge, found OWR not guilty of burglary and convicted both defendants of theft and unauthorized use of a vehicle. Defendants contend that the court erred by denying their motion to suppress and their motion for judgments of acquittal on the theft and unauthorized use charges. We view the evidence with respect to those charges in the light most favorable to the state, *State v. Cervantes*, 118 Or App 429, 431, 848 P2d 118 (1993),[1] and affirm.

In October, 1990, Brookland Financial Corporation hired OWR to repossess an automobile. On November 30, Jost located the car in Toledo, Oregon. He took possession of the car peacefully, drove it to Lincoln City and parked it. Jost testified that, while he was in Lincoln City, he encountered a former repo man from California. He gave the man his business card and asked him to keep an eye on the car while he went to Newport. Defendant then left for Newport[2] to retrieve a truck, which he had repossessed earlier, so that he could drive the truck to OWR, which is located in Portland.

That evening, Officer Lane found the car where defendant had parked it and concluded that the car was creating a traffic hazard. He attempted to contact the registered owner, but was unable to do so. He called Mishler Towing Company and had the car removed. On December 1, Jost sent Watson, an OWR employee, to Lincoln City to

---

[1] For the purpose of reviewing defendants' motions for judgment of acquittal, it makes no difference whether the factfinder was a judge or a jury, because

"the relevant question is whether, after viewing the evidence in the light most favorable to the state, *any rational trier of fact* could have found the essential elements of the crime [plus venue] beyond a reasonable doubt." *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). (Emphasis supplied.)

There is no dispute with respect to the facts pertinent to defendants' motions to suppress.

[2] The record does not reflect how Jost got from Lincoln City to Newport.

retrieve the car. Watson went to the location where defendant had parked the car and discovered that it was not there. He called the police and found out that Mishler had towed it. Watson noticed a Mishler tow truck parked in front of a coffee shop. He went into the coffee shop and confronted two Mishler employees, Ganong and Coles. Watson demanded to know where the car was located. Coles told him that the car was in Mishler's storage facility in Rose Lodge. According to Watson, he was unable to pay Mishler's $135 towing fee, so he returned to Portland.

On December 3, Ganong and Coles went to Mishler's storage facility to drop off another car. The padlock to the facility's entrance was missing, and there were chrome flakes on the ground below. Only one piece of property was missing from the storage facility—the car that defendant had retrieved in Toledo and left in Lincoln City. Deputy Miller of the Lincoln County Sheriff's office was assigned to investigate the break-in. She tried to call Jost a couple of times, but could not reach him. On January 9, 1991, Jost called Miller. According to Miller, Jost told her "that he had retrieved the car from Lincoln County," but he did not give her any details. At trial, defendant testified that he retrieved the car from Yamhill County after paying the California repo man for a tip regarding its location.

Detective Steele of the Lincoln County Sheriff's office applied to a Lincoln County judge for a warrant to search the premises at OWR. In his affidavit in support of the warrant application, Steele stated:

"Application is hereby made for a search warrant to search the following PREMISES located within *Lincoln County*, Oregon, Described as follows:

"A two story, wood frame structure, with full basement located on the east side of SE 28th Street, north of SE Ashe Street, Portland, *Multnomah County*, Oregon. Further described as having two pedestrian doors which face to the west. The numbers 124 are affixed to the front of the house, to the right of the front door. Concrete steps lead to a covered column and post covered porch to access the main front door. A pedestrian door with an awning is also located on the south side of the building. A vacant lot is located to the north of the building." (Emphasis supplied.)

The judge issued a warrant that said, in part:

"You are hereby commanded to search the *PREMISES* located in Lincoln County, Oregon, as described in *page* 1 of the Affidavit for Search Warrant, said *page* being attached to, incorporated in, and made a part of this Search Warrant[.]" (Emphasis in original.)

Steele and other law enforcement officers went to OWR in Portland on February 26 to execute the warrant. When Steele arrived at OWR, he noticed that the warrant and affidavit mentioned Lincoln County. He crossed out "Lincoln County" and wrote "Multnomah County" on each document. During the search, Steele seized a file cabinet that contained documents concerning the repossession of the car.

The next day, Steele discussed the search with a deputy district attorney in Lincoln County and told her about the changes that he had made in the warrant and affidavit. She advised him to apply for another warrant, return the file to OWR, leave the premises and then return to execute a search under the new warrant. Steele did so and re-seized the file cabinet.

In their first assignment, defendants contend that the court erred by denying their motion to suppress. They argue that a warrant that commands a search of "premises in Lincoln County" cannot authorize the search of a place that is actually located in Multnomah County and that Steele had no authority to alter the warrant. They also contend that the second search was unlawful, because that search yielded "the fruit of the poisonous tree."

In ruling on the motion to suppress, the court opined that the first search may have been unlawful. Nonetheless, it denied the motion:

"Well, the first [search] might have been a trespass based on a defective warrant.

"But unless there was something that was illegally gained by it, and it somehow tainted the second entry or the warrant obtaining the second entry, I don't see what [defendants] have to complain about.

"* * * * *

"Okay. The motion to suppress will be denied. The Court finds that the second validly issued warrant is sufficient. * * *

[T]here was no additional information used. So the motion to suppress will be denied."

■■      Only a judge can issue a warrant, ORS 133.545, and only a judge can dictate the terms of a warrant. Unquestionably, Steele had no authority to alter the first search warrant.

■      A search warrant must describe with particularity the place to be searched. ORS 133.565(2); Or Const, Art I, § 9; US Const, Amend IV. In *State v. Devine*, 307 Or 341, 768 P2d 913 (1989), the court wrote:

"The purpose of [the particularity] requirement is to minimize the risk of intrusion into premises other than those as to which a magistrate has found probable cause to search." 307 Or at 343.[3]

The issue here is whether the first warrant unacceptably caused a risk of intrusion into premises other than those for which the issuing judge found probable cause to search.

In *State v. Gomez*, 107 Or App 698, 813 P2d 567 (1991), a search warrant contained a map and directions to get to the residence that was to be searched. The map and directions were inaccurate. However, the warrant did include the correct address and an accurate description of the building. We held that the search was lawful, because the "executing officer could have located the house to be searched from the information contained in the warrant." 107 Or App at 701.

■      This case is no different. The warrant incorporated the description in the affidavit by reference. It instructed the reader to search the place *described* in the affidavit. The affidavit contains the phrase "described as follows." Immediately following that phrase is a detailed description of a building at a particular corner in the City of Portland in Multnomah County. The description lists the building's address and indicates precisely where the address is posted on the building. We do not believe that any reasonable person could misunderstand the warrant as commanding the search

---

[3] *Devine* was decided under Article I, section 9. However, the purpose of the particularity requirement is the same, regardless of its source. *See State v. Ingram*, 313 Or 139, 143-45, 831 P2d 674 (1992).

of any place in Lincoln County. It is obvious that the *description* is of a place in Multnomah County and that the appearance of the name "Lincoln County" in the prefatory language is a clerical error.

The risk that the first warrant could have resulted in an "intrusion into premises other than those as to which a magistrate has found probable cause to search" was negligible. The first search was lawful. The trial court did not err by denying the motion to suppress.[4]

In their second assignment, defendants contend that the court erred by denying their motion for judgments of acquittal on the theft and unlawful use of a vehicle charges.[5] First, they contend that, because the court acquitted them of burglary, it could only have contemplated a theft conviction under the theory of theft by receiving. They claim that they had proven an affirmative defense under ORS 164.035(3), which provides:

> "In a prosecution for theft by receiving, it is a defense that the defendant received, retained, concealed or disposed of the property with the intent of restoring it to the owner."

Defendants contend that the only evidence of intent was Jost's testimony that he intended to return the car to the owner, Brookland Financial Corporation, and that he did, in fact, return it to Brookland.

As the car's lienholder, Brookland may indeed have been an "owner." However, Brookland was not the only owner for purposes of ORS 164.035(3). ORS 164.005(4) provides:

> " 'Owner of property taken, obtained or withheld' or 'owner' means any person who has a right to possession thereof superior to that of the taker, obtainer or withholder."

Defendants have never disputed that Mishler Towing was in lawful possession of the car and that it was entitled to possession until its $135 towing fee was paid. There is no

---

[4] We express no opinion on the trial court's conclusion that the second search could have produced admissible evidence if the first search had been unlawful.

[5] Defendants renewed their motion, without further argument, after presenting their defense.

question that someone removed the car from Mishler's facility by committing a burglary, and there is sufficient circumstantial evidence that Jost knew that it had been unlawfully removed. The evidence allows an inference that defendants are not the innocent agents of the owner of stolen property. *See Proposed Oregon Criminal Code*, Commentary, § 132 at 140 (1970). They are not entitled to the shelter of ORS 165.035(3) to protect them against a charge of theft by receiving when they knew that an owner other than Brookland was entitled to immediate possession of the car. The court did not err by denying their motion for judgments of acquittal on the theft charge on that ground.

Next, defendants argue that the court should have granted their motion for judgments of acquittal on the charges of theft and unlawful use of a vehicle, on the ground that there was no evidence that any of the elements of those crimes occurred in Lincoln County. Although the court acquitted both defendants of burglary, that does not require a conclusion that defendants did not engage in any unlawful conduct in Lincoln County.

■ Jost admitted that he came into possession of the car after it had been impounded by Mishler. Someone removed the car from Mishler's storage facility during a burglary, and there is circumstantial evidence that Jost knew that the car had been taken unlawfully. The factfinder was not required to believe Jost when he testified that he found the car in Yamhill County. After he regained possession of the car, Jost called Deputy Miller and told her "that he had retrieved the car from Lincoln County." That evidence was sufficient to support a finding that Jost came into possession of the car in Lincoln County knowing that the car had been stolen from Mishler's storage facility. That is sufficient to withstand a motion for judgment of acquittal on the ground that venue had not been established.

■ Finally, defendants contend that the court erred by denying their motion for judgments of acquittal on the unauthorized use charges, because Brookland gave them permission to use their vehicle. Assuming that Brookland had any authority to grant someone permission to use a car for which it was the lienholder, we are not persuaded that it had

authority to defeat the interest of Mishler, which was lawfully entitled to immediate possession of the car.

Affirmed.