Argued and submitted May 27, reversed and remanded on appeal; affirmed on cross-appeal August 12, reconsideration denied October 7, petition for review denied October 27, 1992 (314 Or 574)

# STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

# LISA MARIE WOOD,
*Respondent,*

*and*

# KENNETH DOUGLAS PALANUK,
*Respondent - Cross-Appellant.*

(10-90-08391; CA A69894)

836 P2d 176

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant - cross-respondent. With him on the briefs were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Jay W. Frank, Eugene, argued the cause for respondent - cross-appellant. With him on the brief was Moule & Frank, Lawyers, Eugene.

No appearance by respondent.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendants were charged with unlawful delivery, possession and manufacture of controlled substances. ORS 475.992. The state appeals an order that granted defendants' motions to suppress evidence seized pursuant to a search warrant, and defendant Palanuk cross-appeals the denial of his motion for disclosure of an informant's identity. We reverse on appeal and affirm on cross-appeal.

The police executed a warrant[1] that authorized the search of premises that included a garage at 4339 Aster Street. During the search, the officers discovered an area above the garage in which defendant Palanuk lived. At the suppression hearing, Palanuk testified that the area was his "separate residence," even though the garage living area did not have a separate house number or telephone service, he received mail at a mailbox that he shared with Wood and her husband, who lived in the house, and used the Woods' bathroom, because there was no bathroom in the garage. He said that it had a hot plate, a refrigerator and a portable toilet and that a door separated the upstairs area from the rest of the garage. The search of the upstairs portion of the garage

---

[1] The affidavit supporting the warrant identified a vehicle registered to Palanuk as being at the address. Two informants told the affiant that the vehicle belonged to "the person associated with" the laboratory operation. The warrant did not identify the premises at 4339 Aster Street as being owned or occupied by particular individuals. The warrant authorized the police to search for evidence of unlawful manufacture and distribution of methamphetamine

"CURRENTLY WITHIN, OR ABOUT THE CURTILAGE, OR ASSOCIATED VEHICLES * * * LOCATED AT 4339 ASTER STREET, SPRINGFIELD, LANE COUNTY, OREGON FURTHER DESCRIBED AS A SINGLE STORY, WOOD FRAMED, SINGLE FAMILY DWELLING, LIGHT GREEN IN COLOR WITH WHITE TRIM, WITH THE NUMBERS '4339' ON THE FRONT (NORTH SIDE) OF THE RESIDENCE AND NEXT TO THE DOOR. A CARPORT IS LOCATED ON THE WEST SIDE OF THE RESIDENCE AND A GARAGE CONNECTS TO THE CARPORT ON THE SOUTH SIDE. A TRAVEL TRAILER APPROXIMATELY SIXTEEN FEET IN LENGTH AND WHITE IN COLOR IS PARKED IN THE DRIVEWAY AND NORTH OF THE RESIDENCE. THE RESIDENCE FACES NORTH AND IS LOCATED ON THE SOUTH SIDE OF ASTER STREET, SPRINGFIELD, LANE COUNTY, OREGON."

It commands any police officer to

"SEARCH THE ABOVE DESCRIBED RESIDENCE, CURTILAGE, AND VEHICLES AND PERSONS FOR THE ABOVE DESCRIBED EVIDENCE * * *."

revealed several marijuana plants, methamphetamine and drug precursor substances and paraphernalia.

■ Palanuk moved to suppress the items seized from the garage living area, relying on *State v. Devine*, 307 Or 341, 768 P2d 913 (1989), to support his assertion that the search of the area exceeded the scope of the warrant. The trial court ruled:

> "Finally, with respect to the distinction between the garage proper and the upstairs room, which would best be I guess referred to as [an] 'apartment,' I would have to apply the *Devine* case and say that the officers, upon coming to the closed door, and their first observations of what appears to be a place where a person was residing, needed to stop and then secure another warrant for the search of the upstairs apartment."

The issue in *Devine* was whether a search warrant authorizing police officers to search a house also authorized them to search an apartment located in a *separate building* situated on the same lot as the described house. The warrant commanded the officers to search the "premises" of a residence located at 442 W. Centennial Street in Springfield. After searching the house at the address and finding no evidence, they discovered a separate unattached building behind the house. It was a garage apartment; it had a separate lockable entrance and the number 442 1/2 over the door. The officers searched the apartment and discovered the evidence that was the subject of defendant's motion to suppress. The court held that the warrant did not authorize the search of premises at 442 1/2 W. Centennial, but only the premises at 442 W. Centennial. The court's holding is consistent with the proposition that a warrant for a search of certain premises applies only to those premises

> "and that if, at some time during the search, separate premises are encountered and searched, the search of the latter is unauthorized without regard to whether the officers could have anticipated ahead of time that they would encounter those separate premises." 307 Or at 346.

Here, the warrant granted authority to search the entire garage at 4339 Aster Street. The affiant said in the affidavit that a "confidential reliable citizen" told him that he had observed a methamphetamine laboratory in operation in the garage portion of the residence at 4339 Aster Street and

that, according to a "confidential informant," there were two people living at the location of the laboratory. On the basis of that and other information, a magistrate issued a search warrant for the garage and other buildings at the address. Nothing in the grant of authority in the warrant required the police to terminate the search of the garage because they discovered that someone was living in part of it or that it contained living quarters that were separate from those in the house. The search of the apartment in the garage is consistent with the holding in *Devine*, because what was searched were the premises specified in the warrant. The trial court erred when it held that, because the premises contained Palanuk's residence, the police had to apply for another warrant.

■      The state next assigns error to the suppression of evidence of methamphetamine distribution. The affidavit states that there is probable cause to believe that a methamphetamine laboratory is operating at 4339 Aster Street and that the affiant knows that persons who are involved in the illegal manufacture and distribution of methamphetamine frequently possess the drug as well as associated paraphernalia such as sales and business records, shipping receipts and identification documents. The state argues:

> "First, a practical and common-sense reading of the affidavit leads to the conclusion that anyone operating a 'methamphetamine lab' is not likely to do so for his own amusement. There is no other common-sense reason to operate a meth-[amphetamine] lab except to distribute the product. Second, evidence of distribution would *ipso facto* be circumstantial evidence of manufacturing."

Defendants argue that probable cause to believe that evidence of the distribution of illegal drugs will be found in a particular place requires separate evidence than that which would give rise to probable cause regarding a drug manufacturing operation.

We construe supporting affidavits in a common sense and realistic manner to determine whether a neutral and detached magistrate could, on the facts and circumstances shown, conclude that there was probable cause to believe that a search would reveal the things specified in the affidavit in the places requested to be searched. *State v. Villagran*, 294 Or

404, 408, 657 P2d 1223 (1983). Under that standard, we hold that the affidavit in this case provides probable cause to believe that evidence of methamphetamine distribution would be found on the premises. The trial court erred in granting defendants' motion to exclude evidence of methamphetamine distribution.

■ Palanuk cross-appeals, asserting that the trial court erred in denying his motion to disclose the identity of one of the informants whose statements were used in the affidavit in support of the search warrant. After an *in camera* examination of the affiant, the trial court found that the informant would have provided "absolutely" no useful information regarding the defendants' defense and denied the motion. Palanuk argues that, under OEC 510(4)(b),[2] the court may order the state to disclose an informer's identity, even though the informer's testimony is not helpful to the defense.

The legislative commentary to OEC 510 states:

"The Legislative Assembly believes that the adoption of Rule 510 will not change the law in Oregon relating to an informer's privilege." Kirkpatrick, *Oregon Evidence* 276 (2d ed 1989). (Citations omitted.)

---

[2] OEC 510(4)(b) provides:

"No privilege exists under this section:

"* * * * *

"(b)  If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case or of a material issue on the merits in a civil case to which the unit of government is a party, and the unit of government invokes the privilege, and the judge gives the unit of government an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but the judge may direct that testimony be taken if the judge finds that the matter cannot be resolved satisfactorily upon affidavit. If the judge finds that there is a reasonable probability that the informer can give the testimony, and the unit of government elects not to disclose the identity of the informer, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on the judge's own motion. In civil cases, the judge may make any order that justice requires. Evidence submitted to the judge shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the unit of government. All counsel and parties shall be permitted to be present at every stage of proceedings under this paragraph except a showing in camera, at which no counsel or party shall be permitted to be present."

With respect to OEC 510(4)(b), the commentary states:

"The informer privilege, it was held by the leading case, may not be used in a criminal prosecution to suppress the identity of a witness when the public interest in protecting the flow of information is outweighed by the individual's right to *prepare (a) defense.*" *Roviaro v. United States*, [353 US 53, 77 S Ct 623, 1 L Ed 2d 639 (1957).]" Kirkpatrick, *Oregon Evidence* 278 (2d ed 1989).

Before the enactment of the Oregon Evidence Code, the Oregon Supreme Court relied on *Roviaro v. United States, supra*, to hold:

"No fixed rule with respect to production [of an informer's identity] is justifiable. The problem is one which calls for a balancing of the public's interest in protecting the flow of information against the individual's right to *make his defense.*" *State v. Elliott*, 276 Or 99, 102, 553 P2d 1058 (1976). (Emphasis supplied.)

*See also State v. Cortman*, 251 Or 566, 446 P2d 681 (1968), *cert den* 394 US 951 (1969); *State v. Waterbury*, 50 Or App 115, 622 P2d 330 (1980), *rev den* 290 Or 651 (1981). That language makes it clear that the informer's privilege may be overcome only if the informant can provide evidence useful to the defense. Because OEC 510(4)(b) was not intended to change Oregon law on that point, we reject Palanuk's argument. The trial court did not err in denying his motion to disclose an informant's identity.

Reversed and remanded on appeal; affirmed on cross-appeal.