Argued and submitted July 31, 2000; resubmitted en banc September 13, 2001,
reversed and remanded January 30, 2002

## STATE OF OREGON,
*Respondent,*

*v.*

## CRAIG DONALD TRAX,
*Appellant.*

97CR2980FA; A105215 (Control)

## STATE OF OREGON,
*Respondent,*

*v.*

## LISA MARIE TRAX,
*Appellant.*

97CR2980FB; A105216
(Cases Consolidated)

39 P3d 887

Robin A. Jones, Deputy Public Defender, argued the cause for appellants. With her on the brief was David E. Groom, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, and Brewer, Judges.

HASELTON, J.

Deits, C. J., dissenting.

**HASELTON, J.**

In these consolidated criminal cases, defendants appeal their convictions for manufacture and delivery of a controlled substance, ORS 475.992, and manufacture and delivery of a controlled substance within 1,000 feet of a school, ORS 475.999. Defendants assert that the trial court erred in denying their motion to suppress evidence gained during a search of their apartment located within a house at 111 Cary Street in Winston, Oregon. The search was carried out pursuant to a search warrant. Defendants argue that the warrant was constitutionally defective because it failed to identify with sufficient particularity the place to be searched. Or Const, Art I, § 9. Alternatively, defendants argue that the trial court erred in denying their motion to controvert information in the affidavit submitted in support of the warrant. We do not reach defendants' second argument because we agree with their first argument. We therefore reverse and remand.

The question presented is purely a legal one, concerning the sufficiency of the description in the search warrant of the place to be searched. There are no significant disputes of fact concerning the premises in question. The search warrant authorized a search of the following:

"1)   The residence and property located at 111 Cary Street in the City of Winston, Douglas County, Oregon. The residence is a two story wood frame structure with a two car garage underneath it. Off White in color with an Orange front door. The numbers 111 appear in Orange by the garage doors. To reach this residence from I-5 travel southbound to exit 119, take exit 119 and travel to the intersection of Highway 99 and Highway 42. Turn Right (West) onto Highway 42 and travel about 4/10ths of a mile to Cary Street, turn Right (North) onto Cary Street and 111 Cary Street is the Fifth house on the Right and is clearly marked.

"2)   The person of Lisa Marie Trax with the date of birth of July 30th, 1959.

"3)   The person of Craig Donald Trax with a date of birth of July 23, 1968.

"4)    The person of Kathleen L. Brown with a date of birth of January 19th, 1959.

"5)    A 1983 Ford Ranger pick-up White & Cream in color bearing Oregon License number QKB-650 anywhere in the state of Oregon.

"6)    A 1985 Subaru bearing Oregon License number RLU-225 anywhere in the state of Oregon."

The search warrant was issued on November 21, 1997, and executed later that day. Deputy Admire of the Douglas Interagency Narcotics Team testified at the suppression hearing about the execution of the warrant. He indicated that he and four other officers, including Detective Fetch, approached the front door of the house at 111 Cary Street and knocked on that door. Defendant Craig Trax opened the door. The officers explained to Trax that they were there to execute a search warrant and entered the lower floor of the house. After the officers entered the lower floor, Admire discovered that there was a separate apartment located on the second floor. The upstairs apartment belonged to Kathleen Brown. Two of the officers went upstairs to see if anybody was at home, with the intention of asking for consent to search the upstairs apartment. Nobody was at home in the upstairs apartment. The officers executed the warrant by searching the apartment in the lower portion of the house, in which defendants Craig and Lisa Trax resided. The motion to suppress was directed to evidence of marijuana growing and marijuana sales found in the Trax apartment.

Craig Trax testified at the suppression hearing that the outer door of the house at 111 Cary Street is not locked and opens into a small area with a staircase leading up to the second floor and a separate door leading to the Trax apartment. There is a locking door to the Trax apartment and a separate locking door at the top of the stairs leading to the Brown apartment. Trax did not have a key to the door leading to Brown's apartment. The Trax and Brown apartments did not share any common areas such as kitchens or bathrooms. The Traxes paid rent for their apartment separately from Brown's rent. The Traxes had a separate telephone line to their apartment. The utilities were paid by the landlord, so there were no separate utility bills for each apartment.

Admire not only executed the warrant, but also authored the affidavit in support of the warrant. That affidavit stated in pertinent part that Admire had received information from a detective on November 19, 1997, that a confidential reliable informant had purchased methamphetamine from "Lisa" at an off-white house with an orange door on Cary Street in the previous 72 hours and that "Lisa" had said that she had a total of three ounces of methamphetamine. The informant also provided information on the general location of the house on Cary Street and information that a white and cream colored Ford Ranger was parked on the street in front of the house. Admire drove to Cary Street and observed a white and cream Ford Ranger parked in front of 111 Cary Street, which was off-white with an orange door. He determined that the vehicle was registered to Craig and Lisa Trax at that address. Admire also observed a Subaru parked in the driveway of 111 Cary Street and determined that that vehicle was registered to Brown at that address. Admire received information from Detective Fetch that Fetch had performed a consent search at 111 Cary Street a little more than a year earlier, after receiving information that Brown was growing marijuana plants there. Fetch had obtained consent to search and had found two growing marijuana plants.[1] Fetch did not inform Admire—and Admire did not learn from any other source before applying for or executing the warrant—that there were two separate apartments in the house at 111 Cary Street.

Defendants moved to suppress the evidence gathered during the search on the ground that the warrant lacked the requisite specificity as to the place to be searched. In particular, defendants argued that, because the warrant failed to specify which apartment within the house at 111 Cary Street was the target of the search, all evidence gathered in the search pursuant to the warrant must be suppressed. The court denied defendants' motion to suppress:

"The court concludes the search in this case was legal based upon the facts of this case. The officer believed this

---

[1] According to Craig Trax, when officers had arrived to perform the consent search in 1996, he had directed the officers to Brown's apartment. The 1996 consent search was only of the upstairs apartment.

was a single family residence and was able with reasonable efforts to identify the place to be searched which was due in part to Mr. Trax being present at the time the search warrant was executed. Once Detective Admire learned there was an upstairs apartment, it was not searched."

Defendants were tried on stipulated facts, found guilty of all charges, and received optional probationary sentences pursuant to the sentencing guidelines.

On appeal, defendants argue that the trial court erred in denying their motion to suppress, on the ground that the warrant did not specify with sufficient particularity the place to be searched. Or Const, Art I, § 9. The state responds that the test for whether a warrant is sufficiently particular is whether the officers executing the warrant can ascertain with reasonable effort the place to be searched, that the officers here searched only the Trax residence for which there existed probable cause, and that, in any event, "the search warrant affidavit established probable cause to search the entire house, including the persons of defendants and Brown."[2] Alternatively, the state argues that, even if the warrant did not authorize a search of Brown's apartment, the search was valid because the officers "searched only defendants' living area, which was authorized by the warrant and for which they had probable cause." Defendants, in turn,

---

[2] The dissent suggests that the question of whether probable cause existed to authorize the search of Brown's apartment is not at issue in this case. 179 Or App at 213 (Deits, C. J., dissenting). The dissent asserts that defendants do not challenge on appeal "that the issuing magistrate found that there was probable cause to search the entire structure at 111 Cary Street." *Id.* It is unsurprising that defendants did not frame the issue on appeal in such a manner, given that the issuing magistrate *did not* find probable cause to search "the entire structure at 111 Cary Street." Rather, as noted above, the magistrate found probable cause to search "[t]he residence and property" at that address. As discussed at length below, a warrant authorizing the search of "the residence" authorizes the search of a single residence, not multiple residences. 179 Or App at 216-17, *citing State v. Devine*, 307 Or 341, 344, 768 P2d 913 (1989). Defendants' argument on appeal tracks what the warrant actually stated; defendants argue on appeal that, if a "warrant authorizes officers to search one of the residences, *but not the other*, may they elect to search [one of them]?" (Emphasis added.) The state asserts, *as an alternative basis for affirmance*, that "the search warrant *affidavit* established probable cause to search the entire house[.]" (Emphasis added.) Given the nature of defendants' challenge, the nature of the state's argument in support of affirmance on an alternative ground, and given that the warrant authorized the search of a single "residence," the question whether the warrant authorized the search of Brown's apartment is squarely presented and must be addressed.

posit that the officers did not have discretion to choose which apartment to search.

■       Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and *particularly describing the place to be searched*, and the person or thing to be seized." (Emphasis added.)

The purpose of the particularity requirement is "to minimize the risk of intrusion into premises other than those as to which a magistrate has found probable cause to search." *State v. Devine*, 307 Or 341, 343-44, 768 P2d 913 (1989) (citing *State v. Cortman*, 251 Or 566, 446 P2d 681 (1968), *cert den* 394 US 951 (1969)). We turn first to the state's assertion that the warrant in this case created no risk of intrusion into premises other than those as to which the magistrate had found probable cause. The state argues that the magistrate found probable cause to search the entire house at 111 Cary Street, including both the Trax and Brown apartments. In *Devine*, the court, relying on earlier case law, concluded that "if a warrant does not state how many residences may be searched, the warrant only authorizes the search of one residence." 307 Or at 344. Here, as noted above, the warrant authorized the search of "[t]he *residence* and property located at 111 Cary Street[.]" (Emphasis added.) It is clear from the face of the warrant, as well as from the affidavit in support of the warrant, that both Admire and the issuing magistrate were under the impression that there was only one residence at 111 Cary Street, and that the Traxes and Brown all resided together at that one residence. They were mistaken. Although it was not apparent from the outside of the house at 111 Cary Street, there were two entirely separate apartments in the house occupied by different people, and hence there were two residences.

Putting aside the problem that the warrant purported to authorize the search of one residence at 111 Cary Street when, in fact, there were two residences at that location, the state's assertion that probable cause supported a

search of the whole house, including both residences, is incorrect. The informant provided information that Lisa Trax had sold methamphetamine in the 72 hours preceding the application for the warrant. The only information about Brown in the affidavit in support of the warrant was that her car was in the driveway at 111 Cary Street and that a consent search *over a year earlier* had resulted in the seizure of two marijuana plants. Nothing other than the address provided any connection between Brown and the Traxes. In short, the only information about Brown in the affidavit was either entirely innocuous (that her car was in the driveway) or too stale to provide probable cause for a search (that marijuana was found in her apartment over a year earlier). The magistrate, had he known that there were two residences at 111 Cary Street, would not have been able to find probable cause to authorize a search of the Brown residence.

Defendants do not dispute, at least for purposes of this assignment of error, that the affidavit in support of the warrant provided probable cause to search *their* apartment. Moreover, it is not disputed that, in fact, only their apartment was searched.

Thus, the question reduces to whether, notwithstanding the fact that there was probable cause to search the Trax apartment, and only that apartment was searched, the search nevertheless was unlawful because it was conducted pursuant to an unconstitutionally overbroad warrant. As amplified below, we conclude that the search was unlawful for the following reasons:

> *First*, the search of the Trax apartment was valid only if the warrant was valid.
>
> *Second*, a warrant is invalid if it encompasses premises for which there is no probable cause to search. In that circumstance, "the warrant is too broad and therefore constitutionally defective," and "*any* search pursuant to it is illegal, *whether of the premises actually intended or not*[.]" *State v. Blackburn/Barber*, 266 Or 28, 34-35, 511 P2d 381 (1971) (emphasis added).
>
> *Third*, the warrant here authorized the search of the "residence and property located at 111 Cary Street," without

any distinction between the Trax and Brown apartments located at that address.

***Fourth***, here, unlike in *Blackburn/Barber* and related cases, neither the face of the warrant nor information in any affidavit attached to the warrant provided any "tie-breaker" as to whether the area to be searched was the Brown apartment, the Trax apartment, or both; indeed, the warrant's authorization to search the persons of Lisa Trax, Craig Trax, and Kathleen Brown would cause any reasonable officer executing the warrant to believe that the warrant encompassed both the Trax and Brown apartments.

***Fifth***, there was no probable cause to search Brown's apartment.

***Sixth***, thus, the warrant encompassed premises for which there was no probable cause to search—and consequently the search of the Trax apartment was unlawful in that it was based on an invalid warrant.

We begin with the cornerstone of our analysis, *Blackburn/Barber*. In *Blackburn/Barber*, the court stated:

"[T]he aim of the requirement of particularity is to protect the citizen's interest in freedom from governmental intrusion through the invasion of his privacy. *If the search warrant describes premises in such a way that it makes possible the invasion of this interest in privacy without the foundation of probable cause for the search, the warrant is too broad and therefore constitutionally defective.*

"In testing a warrant for definiteness it is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain the identity of the place intended. The description must be sufficiently clear so that the property to be searched is recognizable from other neighboring properties. *If, however, a warrant purporting to authorize a search is sufficiently ambiguous that it is impossible to identify with a reasonable degree of certainty the particular premises authorized to be searched, the warrant may not be executed and any search pursuant to it is illegal, whether of the premises actually intended or not, because of the danger that the privacy of unauthorized premises will be invaded.*" 266 Or at 34-35 (emphasis added; citations, internal quotation marks and footnotes omitted).

Thus, under the rule of *Blackburn/Barber*, if the warrant here does, in fact, describe the premises in such a way that it makes possible the invasion of a privacy interest without probable cause—that is, if it does authorize the search of Brown's apartment—then *"any* search pursuant to it is illegal," *id.*, including the search of defendants' apartment. *Accord State v. Martin/Dills*, 170 Or App 366, 12 P3d 548 (2000) (where the warrant erroneously omitted an apartment number, the fact that the officer executing the warrant knew which apartment was the intended subject of the search and searched only that apartment did not save the warrant from being impermissibly overbroad).

We do not, of course, suggest that any search pursuant to a warrant that has some ambiguity or error in description is necessarily unlawful. In *Blackburn/Barber*, the court acknowledged that "where apartment or street addresses in the warrant are in error but there is other identifying information in the warrant by which the officers can determine with a reasonable degree of certainty the premises intended, they properly may proceed to make the search." 266 Or at 36.[3]

*Blackburn/Barber* itself is illustrative. There, the warrant authorized the search of a single apartment: "Apartment No. 2 in the basement of the residence at 240 South Davis Street, McMinnville, Oregon, said apartment having the letters ECURB on the door." *Id.* at 31. When the officers arrived to conduct the search, they discovered that apartment No. 2 did not have "ECURB" on the door, but another apartment did have "ECURB" on the door. They proceeded to search apartment No. 2 and the "ECURB" apartment, as well as other apartments. *Id.* at 32-33. Ultimately, the court held

---

[3] *See also Cortman*, 251 Or at 568 (where warrant failed to include apartment number but specified that the apartment to be searched was that of a named defendant, the executing officer had sufficient information to execute the warrant without straying into premises which he had no authority to enter); *State v. Bush*, 174 Or App 280, 25 P3d 368 (2001) (where warrant included incorrect street address of property to be searched, but contained correct tax lot number and a precise description by which officers could distinguish property from other properties, warrant was valid); *State v. Edwards*, 149 Or App 702, 945 P2d 553, *rev den* 326 Or 234 (1997) (where warrant included incorrect street address of property to be searched, but contained a detailed description "which corresponded to only one premises in the world," warrant was valid).

that items seized from the "ECURB" apartment were not subject to suppression, but items from apartment No. 2 had to be suppressed. The basis of that holding was the court's conclusion that the warrant identified the "ECURB" apartment as the *only* apartment to be searched:

> "When the officers possessed a warrant which authorized the search of Apartment 2 which had ECURB on the door and there was no such apartment, but there were an Apartment 2 and an unnumbered apartment with ECURB on the door, they could not execute the warrant if real doubt existed as to which was intended. We hold that there could be no real doubt as to which of the premises was intended by the warrant and that it could be ascertained with reasonable certainty. No one could have made a mistake or been confused about a word like ECURB, but anyone could easily have made a mistake about a numeral." *Id.* at 35-36.

Thus, in *Blackburn / Barber*, the warrant authorized a search of only a single apartment, not a search of premises encompassing multiple apartments. Because the warrant in *Blackburn / Barber* authorized a search of only one apartment, and the warrant contained information that left no real doubt as to which apartment was intended, only the search of that apartment (the "ECURB" apartment) was lawful; conversely, the searches of the other apartments were not authorized by the warrant and hence were unlawful. *Id.* at 36. In short, the warrant in that case was not overbroad, but the officers executing it went beyond their authority by searching areas not described in the warrant.

Other Oregon Supreme Court decisions, both before and after *Blackburn / Barber*, consistently apply those principles. *Devine* is exemplary. In *Devine*, police officers executed a search warrant describing the place to be searched as a single-story, wood-framed dwelling, white and black in color, at 442 W. Centennial, in Springfield, Oregon, with the numbers "442" being located on the residence. 307 Or at 343. When executing the warrant, the officers discovered a detached garage apartment on the premises with a separate, lockable entrance, and the number 442 ½ over the door. The garage apartment was painted white. The officers searched the detached garage apartment and found evidence that the defendant sought to suppress. *Id.* The trial court denied the

defendant's motion to suppress, the defendant ultimately was convicted, and he appealed, asserting that the evidence at issue should have been suppressed.

On appeal, the Supreme Court began by reiterating the general principle that

> "officers may search only a single residence in a multiple-residence building or property if the warrant described only one such residence. * * * [I]f a warrant does not state how many residences may be searched, the warrant only authorizes the search of one residence." *Devine*, 307 Or at 344.

The court stated that it was "reasonably clear" that the detached garage apartment and the house were two separate residences, given that each was entirely self-contained, had separate street numbers, and separate telephone lines, and that the garage tenant paid rent to the owner of the house. The court emphasized that the trial court had erroneously focused on whether the executing officer had a reasonable and good faith belief that only one residence existed at the location:

> "The officer's 'good faith' or 'reasonableness' had nothing to do with the inquiry. If the defendant's living quarters really were 'separate'—*i.e.*, if defendant really was maintaining a separate household in the space, subject only to the homeowner's right to enter in emergencies—then those separate premises were not covered by the search warrant." *Id.* at 345.

The court went on to summarize *Blackburn / Barber*, described above, as well as the case of *Siverson v. Olson*, 149 Or 323, 40 P2d 65 (1935), discussed below, and concluded that "a warrant for the search of certain premises applies only to those premises and that if, at some time during the search, separate premises are encountered and searched, the search of the latter is unauthorized without regard to whether the officers could have anticipated ahead of time that they would encounter those separate premises." *Devine*, 307 Or at 346.

*Siverson*, on which the court relied in *Devine*, is particularly instructive here, in that it is factually most similar

to the present case. The court in *Devine* described *Siverson* as follows:

> "In [*Siverson*], which involved an action for damages in trespass, a District Judge in Multnomah County had issued a search warrant authorizing a search for intoxicating liquors on premises described as 309 E. Hancock street in Portland, Multnomah County, Oregon. There proved to be two buildings at that address. One of them, a residence, was occupied by the Siversons on the ground floor and the Porters on the second floor. There is no suggestion that the fact of bifurcated occupation of the house could have been discovered ahead of time. A police officer searched the whole house. This court held that the warrant was not valid to authorize a search of the entire premises and that an action against the policeman would therefore lie." *Devine*, 307 Or at 346.

Thus, in *Siverson*, as in this case, a warrant ostensibly authorized the search of a house but, unknown to the officers involved in obtaining and executing the warrant, the house contained two separate residences. In those circumstances, *Siverson* holds (and *Devine* reiterates) the invalidity of the warrant renders the search of any part of the premises unlawful:

> "[T]he residence at said street number was occupied by two families, Mr. Porter and his mother residing in the upper part of the house and plaintiff and his wife occupying the rest of the residence. The description in the affidavit is, 'a certain building situated on the premises occupied by and under the control of the said John Doe at No. 309 East Hancock Street.' Under the facts in this case, such description is insufficient: 56 Corpus Juris, subject, 'Searches and Seizures,' p. 1227, § 133, note 92, citing *United States v. Inelli*, 286 Fed. 731 [D C Cir 1923]; *Brandt v. State*, 34 Okl. Cr. 400 (246 P. 1106) [(1926)]; *Myer v. State*, 34 Okl. Cr. 421 (246 P. 1105) [(1926)]; *Daniels v. State*, 32 Okl. Cr. 426 (241 P 836) [(1925)]; *Cummings v. State*, 32 Okl. Cr. 274 (240 P. 1078 [(1925)]; *Weise v. State*, 32 Okl. Cr. 203 (240 P. 1075) [(1925)]; Cornelius, *Search and Seizure* (2d Ed.), p. 495, § 205." *Siverson*, 149 Or at 328.

A review of the cases relied on in *Siverson* further illuminates its holding. The lead case, *Inelli*, focused on the particularity requirement:

"A further [guard against abuse of process] is directed to the description of the place [to be searched]. It is described by street and number, and the name of the person to whom the premises then or formerly belonged. Had the whole premises included within the description belonged, as was doubtless erroneously taken for granted, to the person whose place was meant to be searched, such a description as that given might meet all practical needs. The fact, however, is that the second floor of the premises belonged to a transportation company. It must not be forgotten that a warrant is a command which must be obeyed. It is true that the persons to whom it is directed are expected to use judgment and discretion in its execution, but the command is none the less imperative. Such a command should not direct a search which would be wholly unjustified. If the place described by the street and number is used by a number of persons for different purposes, then it is not a place; but there are several places included in the one description. It is then a general, but not a 'particular' description. * * *

"The evidence in the instant case admittedly did not justify a search of the place described in the warrant. The description was too broad, and included premises to search for which no probable cause appeared. * * * The evidence * * * in respect to the place was too general and too meager to permit the place to be searched to be 'particularly described,' and for this reason the search warrant proceeding cannot be sustained." 286 F at 732.

The various Oklahoma cases cited by the court in *Siverson* followed *Inelli*. In the first of those cases, *Weise*, the affidavit in support of a search warrant indicated that the affiant had received information from a named informant that there was a cave upon certain premises used for the purpose of manufacturing liquor. The warrant issued commanding the search of all buildings and land at a certain legal lot description. *Weise*, 240 P at 1077. The court quoted the language from *Inelli* that, "where it appeared that the building so designated was occupied by more than one tenant," it is considered more than one "place." *Weise*, 240 P at 1077. The court held: "The affidavit here describes the place to be searched as a certain section of land, and the proof shows that the defendant was the owner of only one quarter of said section. It fails to state the name of the owner, and does not

state that his residence is a place of public resort." *Id.* The court held that the search was unconstitutional. *Id.*

The other four Oklahoma cases all follow *Weise*, and all involved situations where the warrant either named no person or named only a "John Doe," but contained a particular property description. Two of those cases in particular shed some light on the present case because they have factual similarities.

In *Myer*, the affidavit in support of a warrant named no person but described a building at a particular address. That building was a boarding house in which the defendant resided. 246 P at 1106. In holding that the warrant was insufficiently particular, the court stated:

> "Where the place to be searched is described in the affidavit and in the search warrant by a single street number without naming the owner or any of the occupants, where two or more families reside in separate apartments, a search warrant directing officers to search the premises designated by such single number is void because in legal contemplation it describes more than one 'place,' within the meaning of the Constitution." *Id.*

In *Daniels*, a "John Doe" warrant described a parcel of land and authorized the search of a residence and outbuildings on the premises. 241 P at 836. The court went on to note that "[i]t is further shown the names of the several owners of the lands described in the affidavit and the search warrant; also that only part of said lands were in the possession of the defendant[.]" *Id.* The court followed *Weise*, noting that, where the land designated in the warrant is owned and occupied by several persons, it is in fact more than one "place" for purposes of constitutional analysis.

Given those cases, it is apparent why the Supreme Court in *Siverson* held that the warrant was defective. The warrant in question was insufficiently particular because there was more than one "place" to be searched at the described premises (the Porter and the Siverson residences), and because the "John Doe" description in the warrant did not provide officers executing the warrant with sufficient "tie-breaking" information for them to determine which of

the residences at the premises described was the proper subject of the search warrant.

■■    From *Siverson*, *Blackburn / Barber* and *Devine*, and their underlying authority, we thus derive the following operative principles: (1) Unless otherwise specified, a warrant to search a residence at a specific address authorizes the search of only one residence at that address.[4] *See Devine*, 307 Or at 344. (2) If a warrant authorizes the search of a residence at a specific address but the officers executing the warrant discover more than one residence at that address, the officers may look to other identifying information contained in the warrant to discern which is the residence that is the proper subject of the search. *Blackburn / Barber*, 266 Or at 35-36.[5]

---

[4] The dissent asserts that our conclusion on this point is at odds with *State v. Wood*, 114 Or App 601, 836 P2d 176, *rev den* 314 Or 574 (1992). 179 Or App at 215 (Deits, C. J., dissenting). We disagree. In *Wood*, one of the defendants was living over the garage of a house and argued that, despite the fact that he received mail at the house, used the bathroom at the house, etc., the area over the garage should be considered a "separate residence" not described in the warrant. 114 Or App at 603-04. We rejected the defendant's argument, because the warrant specifically granted authority to search the entire garage, and the affidavit in support of the warrant contained information about a methamphetamine laboratory in the garage, and about two people living at the location of the laboratory. *Id.* at 604-05. In *Wood*, unlike in the present case, all the defendant was complaining about was that the warrant did not explicitly refer to the garage with the methamphetamine laboratory that had two people living there as a "residence." In that case, there was probable cause to search the garage, and the garage was explicitly described in the warrant. There, the warrant did not purport to authorize the search of any portion of the described premises for which no probable cause existed. Here, by comparison, the warrant purported to authorize the search of a building containing two residences, but was based on probable cause to search only one of those residences.

*Wood* is factually distinguishable from the present case. The question in *Wood* was whether, where a garage was specifically described in a search warrant as a place where people are living, and probable cause existed to search it, the failure of the warrant to describe the garage as a "residence" was a fatal flaw. That is entirely different from the issue presented here, where the warrant authorized the search of a residence at a location where two residences existed and probable cause did not exist to search both residences.

[5] In *State v. Davis*, 106 Or App 546, 548 n 1, 552, 809 P2d 125 (1991), we held that where there was no evidence in the record that the affidavit in support of a warrant was attached to the warrant at the time it was executed, information contained in the affidavit that was not contained in the warrant was irrelevant to this analysis. We further stated that "the authority of an officer to search premises under a search warrant is wholly circumscribed by the description in the warrant. * * * [T]he officer's independent knowledge cannot cure an erroneous description." *Id.* at 551-52. Therefore, we look to the face of the warrant to determine whether an officer executing the warrant could with reasonable effort ascertain the place intended to be searched.

(3) However, if it is not possible to tell from the warrant "with a reasonable degree of certainty the particular premises authorized to be searched, the warrant may not be executed and *any* search pursuant to it is illegal, whether of the premises actually intended or not[.]" *Id.* at 35 (emphasis added).

Before applying those principles to the present facts, we must acknowledge one final variant of the "single premises/multiple residences" case law—the so-called *"Willcutt* exception." In *State v. Willcutt*, 19 Or App 93, 95, 526 P2d 607, *rev den* (1974), we stated:

"Where subunits or multiple units exist, the general rule is that a search warrant must specify which subunit or units are to be searched. * * * However, a recognized exception to the rule occurs where the multi-unit character of the premises was not externally apparent and was not known to the officers applying for and executing the warrant."[6] (Citations omitted.)

*Devine* casts that analysis into serious doubt. As noted above, the court in *Devine* first noted that a warrant authorizes the search of only one residence unless it specifically states otherwise, and went on to hold that

"a warrant for the search of certain premises applies only to those premises and that if, at some time during the search, separate premises are encountered and searched, the search of the latter is unauthorized *without regard to whether the officers could have anticipated ahead of time that they would encounter those separate premises.*" 307 Or at 346 (emphasis added).

---

We note, however, that the result in the present case is not dependent on the rule from *Davis* that we will not look to the affidavit in support of the warrant unless it was attached to the warrant at the time of execution, because the problem regarding determination of which apartment was to be searched would not be "cured" in the present case by reference to the affidavit.

[6] *Willcutt* was not the first case to apply this exception, but is the case that most clearly explains the nature of the exception. For the proposition that this exception was "recognized," the court in *Willcutt* relied on *State v. Nearing/Baker*, 16 Or App 30, 517 P2d 308 (1973) (where the officer who obtained the warrant did not know that defendants were renting only a portion of what appeared to be a single-family residence, the warrant authorizing a search of the entire residence was valid) and *State v. Koberstein*, 8 Or App 307, 493 P2d 176, *rev den* (1972) (where police executing a warrant had no reason to know that there were multiple living units in what appeared to be a single-family residence, the warrant to search the residence was not overbroad).

Thus, in *Devine*, the court was explicit that the reasonableness of an officer's belief that premises only contained a single dwelling was not relevant to the proper inquiry.

Notwithstanding *Devine*, however, we need not determine *Willcutt*'s continuing vitality in this case. That is so because the circumstances here would not, in all events, trigger that exception. As noted, *Willcutt*, by its own terms, applies only where the "multi-unit character of the premises was not externally apparent and was not known to the officers applying for *and executing* the warrant." 19 Or App at 95 (emphasis added). Here, it is undisputed that the mutli-unit character of the premises was not known to Deputy Admire, who applied for and executed the warrant. However, Detective Fetch, who also executed the warrant, knew that there were multiple units on the premises, given that he had performed a consent search of Brown's apartment at that address the previous year. Where one of the officers executing the warrant knows the mutli-unit character of the premises, the rationale underlying the *Willcutt* exception no longer exists.[7] In sum, regardless of whether the *Willcutt* exception remains good law in the wake of *Devine*, it has no potential application on these facts.

■    We turn, at last, to the application of the law to the facts of this case. As noted above, the first relevant inquiry is whether the warrant specified the search of only one residence — as the court noted in *Devine*, unless otherwise specified, a warrant to search a residence at a particular address authorizes the search of only one residence at that address. 307 Or at 344. With respect to that inquiry, the warrant here referred to "the residence" at 111 Cary Street. It contained no suggestion that more than one residence existed at the location, or that there was probable cause to search more than

---

[7] The dissent asserts that our application of *Willcutt* is incorrect because "Admire was not aware of any knowledge that Fetch might have gained about the multi-unit nature of this structure during the earlier search of the building." 179 Or App at 218-19 (Deits, C. J., dissenting). Our case law does not draw a distinction based on whether *all* officers executing a warrant were aware it was a multi-unit structure. Nor does the dissent's suggestion that Fetch might have forgotten his earlier search at the address have relevance to the inquiry which, as the court noted in *Willcutt* itself, concerns whether "the officers *should have known* they were entering what defendant claimed to be a multi-unit structure." 19 Or App at 98-99 (emphasis added).

one residence at the location. Under *Devine*, therefore, we must assume that the warrant authorized the search of only one residence. 307 Or at 344.

Given that the warrant authorizes the search of only one residence, we must next determine whether the warrant contains any "tie-breaking" information that would permit officers executing the warrant to determine which of the two residences at the location described in the warrant was the proper object of the search. We conclude that there is no "tie-breaking" information in the warrant that would have permitted the officers executing the warrant to determine that the Trax apartment, and not the Brown apartment, was the proper object of the search. As noted above, the officers may look to names contained in the warrant, *Cortman*, 251 Or at 569 (name of resident of apartment was contained in the warrant), or to other identifying information about the location to be searched, *Blackburn / Barber*, 266 Or at 35-36 (unique "ECURB" description of apartment was contained in the warrant), to determine which residence is the proper object of the search. Here, however, *both* Brown *and* the Traxes were named in the warrant.[8]

Moreover, unlike in *Blackburn / Barber*, in this case there was no other "ECURB"-like identifying information in the warrant to guide the officers executing the warrant to the correct apartment. Finally, even if we were to look beyond the face of the warrant to the affidavit in support of the warrant, *but see Davis*, 106 Or App at 548 n 1, 552 (if warrant does not have affidavit attached or incorporate it by reference, information in the affidavit is irrelevant to inquiry), the information in the affidavit also failed to provide the necessary "tie-breaker," because the affidavit, like the warrant, contained information relating to Brown as well as to the Traxes.

In sum, the warrant instructed officers to search a residence located at specifically described premises. That

---

[8] That critical fact makes all the difference in distinguishing this case from *Cortman* (on which the dissent relies). In *Cortman*, the name in the warrant provided the officers with the necessary tie-breaking information because the warrant specified "the name of the occupant whose rooms were to be searched." 251 Or at 569. Here, however, *both* of the apartments at the specified location belonged to individuals named in the warrant, and thus the warrant provided no guidance as to which apartment was to be searched.

specifically described premises, however, contained two separate residences. Nothing in the warrant provided information to permit an officer executing the warrant to distinguish which of the two residences was to be searched. Thus, the warrant was "sufficiently ambiguous that it is impossible to identify with a reasonable degree of certainty the particular premises authorized to be searched[.]" *Blackburn / Barber*, 266 Or at 35.

Given that ambiguity, "the warrant may not be executed and *any* search pursuant to it is illegal, whether of the premises actually intended or not, because of the danger that the privacy of unauthorized premises will be invaded." *Id.* (emphasis added). That directive from *Blackburn / Barber* is explicit. Contrary to the dissent's suggestion, that principle is not narrowly confined to *Blackburn / Barber*'s particular facts. Rather, it is deeply rooted in, and broadly derived from, Oregon precedent dating at least to *Siverson*. Oregon courts have consistently applied the particularity requirement of Article I, section 9, to protect residences from unauthorized searches. *See, e.g., Blackburn / Barber*, 266 Or at 34 (if a "warrant describes premises in such a way that it makes *possible* the invasion of this interest in privacy without the foundation of probable cause for the search, the *warrant* is too broad and therefore constitutionally defective"). Today, we do the same.

We conclude that the warrant in question was constitutionally defective because it failed to described with sufficient particularity the place to be searched. Accordingly, we conclude that the trial court erred in denying defendants' motion to suppress.

Reversed and remanded.

**DEITS, C. J.,** dissenting.

The majority holds that the trial court erred in denying defendants' motion to suppress. It concludes that the warrant in this case was constitutionally defective because it failed to describe with sufficient particularity the place to be searched. For the reasons I will explain, I believe that the trial court acted properly in denying defendants' motion to suppress.

The majority is right that the purpose of the particularity requirement is to minimize the risk of intrusion into premises other than those as to which a magistrate has found probable cause to search. *State v. Devine*, 307 Or 341, 343, 768 P2d 913 (1989). As the Supreme Court explained in *State v. Blackburn / Barber*, 266 Or 28, 34, 511 P2d 381 (1973):

> "If the search warrant describes premises in such a way that it makes possible the invasion of this interest in privacy without the foundation of probable cause for the search, the warrant is too broad and therefore constitutionally defective."

My disagreement with the majority begins with its conclusion that there was not a foundation of probable cause to support the issuance of a warrant for the search of the entire structure at 111 Cary Street and its three occupants; Craig and Lisa Trax and Kathleen Brown. The majority begins its analysis by assessing the information in the affidavit supporting the search warrant and reaching the conclusion that the information concerning Brown was not sufficient to provide probable cause to support a search of her residence. The majority concludes that "the only information about Brown in the affidavit was either entirely innocuous * * * or too stale to provide probable cause for a search." 179 Or App at 200. The problem with the majority's holding on this point, however, is that the issuing magistrate found that there was probable cause to search the entire structure at 111 Cary Street and its three occupants. The trial court characterized the issues before it as "the failure to adequately describe a multi-unit dwelling to be searched * * * [and] whether the unnamed informant's reliability was sufficiently established." Accordingly, it did not address this specific issue. On appeal, except for the contentions that they make in this assignment of error related to the trial court's denial of their motion to controvert, defendants do not challenge the magistrate's finding of probable cause. Defendants' argument on appeal is limited to the legal argument that, "when police search any separate residence in a structure that is not specifically described in a warrant, the search is unsupported by a warrant and, therefore, is unreasonable *per se*." In other words, defendants argue that there is a *per se* rule that, if a warrant describes a structure and it turns out that there are

separate residences within the structure, regardless of the particular circumstances, the warrant is automatically constitutionally defective because of a lack of particularity.[1]

The majority essentially adopts defendants' *per se* rule, concluding that, under our case law, if a warrant describes premises that turn out to include multiple residences, unless there is a "tie breaker" in the warrant itself, allowing the executing officer to ascertain which residence may be searched, the warrant is automatically invalid for a lack of particularity. I do not believe that our case law compels the adoption of such a rigid rule. As I will discuss, there are circumstances where, even though an unanticipated separate living area is discovered during the execution of a search, there is sufficient information in the warrant and the supporting affidavit to provide probable cause to search that additional living area in the structure.

In reaching its conclusion, the majority relies strongly on the Supreme Court's decision in *Devine*. The majority draws the rule from *Devine* that, if a warrant describes one residence then, *under all circumstances*, only one residence may be searched pursuant to the warrant. Viewed in its context, I do not believe that *Devine* supports that broad a proposition. The warrant in *Devine* authorized entry into the premises at 442 W. Centennial. The disputed area searched was a separate structure behind the house. It had a different address, 442 ½ W. Centennial, and was a different color than the structure described in the warrant. Significantly, in *Devine*, the area that was discovered and searched during the execution of the warrant was *not* an area that was included in the description in the warrant. No one disputed that the area searched was in a completely different

---

[1] I disagree with the majority's position that defendants necessarily raised the issue of whether the supporting affidavit provided probable cause to justify the search of all parts of the structure at 111 Cary Street. As pointed out above, defendants make the argument on appeal that, as a matter of law, if a warrant describes one residence and, in fact, the structure includes more than one residence, the warrant is constitutionally defective for a lack of particularity, regardless of the circumstances. Defendants simply did not make the further argument, which they easily could have done, that, even if there is not a *per se* rule, the information in this supporting affidavit concerning the activities in the structure, and the information regarding its occupants, did not provide probable cause to justify the search of all parts of the structure and its occupants.

structure from the premises described in the warrant. Further, there was no information in the warrant or supporting affidavit that provided probable cause to support a search of that separate structure.

I would agree that *Devine* holds that, if a warrant authorizes a search of a structure and it turns out that there is more than one premises within that structure, the warrant may not be sufficiently particular. However, if there is information in the warrant that allows the executing officer to determine with reasonable certainty which area the warrant authorizes to be searched, the warrant does not lack sufficient particularity. Further, if there is information in the warrant and supporting affidavit providing probable cause to search all areas of the premises, even separate living units, the warrant does not suffer from a lack of particularity. In such circumstances, the executing officers can ascertain with reasonable certainty the areas to be searched. Most importantly, there is no risk of intrusion into an area for which there is not probable cause to search and, consequently, no lack of particularity.

In our decision in *State v. Wood*, 114 Or App 601, 836 P2d 176, *rev den* 314 Or 574 (1992), we applied *Devine* in exactly that manner. In that case:

> "The police executed a warrant that authorized the search of premises that included a garage at 4339 Aster Street. During the search, the officers discovered an area above the garage in which defendant Palanuk lived. At the suppression hearing, Palanuk testified that the area was his 'separate residence,' even though the garage living area did not have a separate house number or telephone service, he received mail at a mailbox that he shared with Wood and her husband, who lived in the house, and used the Woods' bathroom, because there was no bathroom in the garage. He said that it had a hot plate, a refrigerator and a portable toilet and that a door separated the upstairs area from the rest of the garage. The search of the upstairs portion of the garage revealed several marijuana plants, methamphetamine and drug precursor substances and paraphernalia." *Id.* at 603-04 (internal citations omitted).

Relying on *Devine*, the defendant in *Wood* argued that the search exceeded the scope of the warrant. In that

case, however, we did not view *Devine* as controlling, nor did we articulate a rule that, once the separate premises were discovered, the warrant automatically lacked particularity. Rather, we indicated that because the garage was within the premises described in the warrant and because there was information concerning the garage in the supporting affidavit, it did not matter if, during the course of the search, the police discovered that there was a separate apartment upstairs in the garage. We explained:

> "Nothing in the grant of authority in the warrant required the police to terminate the search of the garage because they discovered that someone was living in part of it *or that it contained living quarters that were separate* from those in the house. The search of the apartment in the garage is consistent with the holding in *Devine*, because what was searched *were the premises specified in the warrant*." *Id*. at 605 (emphasis added).

The majority takes the position that our decision in *Wood* is factually distinguishable from this case and is not inconsistent with its holding here. I disagree. As here, the warrant in *Wood* authorized the search of *one residence*. It specifically mentioned the garage, as does the warrant in this case, and there was no indication in the warrant that there was a separate apartment upstairs in the garage.[2] As noted above, we held in *Wood* that it *did not matter* if there was a

---

[2] In *Wood*, the warrant authorized the search for evidence of unlawful manufacture and distribution of methamphetamine:

" 'CURRENTLY WITHIN, OR ABOUT THE CURTILAGE, OR ASSOCIATED VEHICLES * * * LOCATED AT 4339 ASTER STREET, SPRINGFIELD, LANE COUNTY, OREGON FURTHER DESCRIBED AS A SINGLE STORY, WOOD FRAMED, SINGLE FAMILY DWELLING, LIGHT GREEN IN COLOR WITH WHITE TRIM, WITH THE NUMBERS '4339' ON THE FRONT (NORTH SIDE) OF THE RESIDENCE AND NEXT TO THE DOOR. A CARPORT IS LOCATED ON THE WEST SIDE OF THE RESIDENCE AND A GARAGE CONNECTS TO THE CARPORT ON THE SOUTH SIDE. A TRAVEL TRAILER APPROXIMATELY SIXTEEN FEET IN LENGTH AND WHITE IN COLOR IS PARKED IN THE DRIVEWAY AND NORTH OF THE RESIDENCE. THE RESIDENCE FACES NORTH AND IS LOCATED ON THE SOUTH SIDE OF ASTER STREET, SPRINGFIELD, LANE COUNTY, OREGON.'

"It commands any police officer to

" 'SEARCH THE ABOVE DESCRIBED RESIDENCE, CURTILAGE, AND VEHICLES AND PERSONS FOR THE ABOVE DESCRIBED EVIDENCE * * *.' " 114 Or App at 603 n 1.

separate apartment in the garage, because the garage structure was sufficiently described in the warrant. The majority's analysis would require a different outcome in *Wood*. If there were a separate residence in a garage—under the majority's understanding of *Devine*—the police could search only one residence, where there was information in the warrant from which the police could determine which residence to search; but, if there was no such information in the warrant, the warrant automatically would be invalid. In this case, as in *Wood*, both living units were within a structure described in the warrant. Further, here, all occupants of the structure were named in the warrant.

The majority relies on a number of cases, both from Oregon and other jurisdictions, for its holding that if, during a search, separate premises are encountered, the search of all parts of the premises is unauthorized without regard to whether the officers could have anticipated ahead of time that they would encounter the separate premises. Notably, none of the cases relied on by the majority involved circumstances such as here, where there is information about all of the occupants of the structure in the supporting affidavit, and all of the occupants of the structure are named in the warrant.

For example, the Supreme Court's decision in *Siverson v. Olson*, 149 Or 323, 40 P2d 65 (1935), involved a civil suit in which the plaintiff, whose home had been searched pursuant to a warrant, brought a suit for damages against the judge who issued, and the officer who executed, the warrant. The warrant authorized the search of "a certain building situated on the premises occupied by and under the control of the said John Doe at No. 309 East Hancock St." The warrant did not indicate that there were two residences in the building *nor did it name the persons to be searched*. On appeal from a judgment of nonsuit, the court considered whether the search violated the plaintiff's Article I, section 9, rights as a predicate issue to whether the action could be maintained against the defendants. The court characterized the argument as:

> "The fourth assignment of error charges the violation by defendants of section 9, article one of the Constitution of

> Oregon. This is quite indirect. It resembles the piling of Pelion upon Olympus to load the errors of defendants upon the learned trial judge[.]" 149 Or at 327.

The court noted that there were "at least two buildings upon the premises designated as No. 309 East Hancock street." *Id.* at 328. Then, citing to a note in *Corpus Juris Secondum,* the court concluded that the search was invalid. It distinguished an earlier opinion, *State v. Quartier,* 114 Or 657, 236 P 746 (1925), noting in that case that "it did not appear that there was more than one building" and the "true names of those in possession were expressly stated," whereas the warrant in *Siverson* stated on "premises occupied and under the control of said *John Doe.*" *Id.* (emphasis added).

In this case, the warrant authorized the search of the entire premises at 111 Cary Street and its three occupants. As discussed above, it is not challenged here that the magistrate, based on the information available at the time of the issuance of the warrant, found that there was probable cause to search the entire structure at 111 Cary Street *and the three occupants.* As in *Wood,* the particularity requirement of Article I, section 9, does not automatically require the exclusion of evidence obtained in the search of the structure described in the warrant simply because, during the execution of the search, the police discover a separate living area *within* the described structure. Here, the magistrate concluded that the information provided probable cause to search the entire structure and all of its occupants. Based on that finding, there was no risk here that, in the execution of the warrant, the police would intrude into an area for which there was no probable cause.

Finally, I agree with the majority that, in light of *Devine,* the viability of our decision in *State v. Wilcutt,* 19 Or App 93, 536 P2d 607, *rev den* (1974), is doubtful. However, I do not agree with the majority that the record supports the finding that the officers had knowledge of the multi-unit nature of this structure before the execution of the warrant. Apparently, Detective Fetsch had performed a consent search of Brown's apartment located at 111 Cary Street, during the year before this search occurred. However, the trial court expressly found that Admire was not aware of any

knowledge that Fetsch might have gained about the multi-unit nature of this structure during the earlier search of the building. Further, there was no evidence that Fetsch communicated to Admire any knowledge that Fetsch might have gained in the earlier search. In fact, there is no evidence in the record that shows that Fetsch had any recollection that there were multiple units in this building.[3] As the trial court found, defendants failed to prove that Admire knew that there was more than one living unit in the apartment.

Because I would affirm the trial court's denial of defendants' motion to suppress, I will address defendants' second assignment of error, in which they argue that the trial court erred in denying their motion to controvert. ORS 133.693. Under that statute, a defendant may contest the "good faith accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority." ORS 133.693(2). It is a defendant's burden to prove by a preponderance of evidence that the evidence offered before the issuing magistrate "was not offered in good faith, was not accurate and was not truthful." ORS 133.693(3).

Defendants argue that the search warrant affidavit contains insufficient facts to have permitted the magistrate to assess the unnamed confidential informant's reliability and that the police did not sufficiently corroborate the informant's information. When an affidavit includes information supplied by an unnamed informant, as is the case here, we consider whether the "affidavit communicated the basis for the informant's knowledge of the things stated and the credibility of the informant or the reliability of the things stated." *State v. Brust*, 94 Or App 416, 420, 765 P2d 1246 (1988). "[W]e give deference to the issuing magistrate and resolve doubtful or marginal cases in the light of the preference for warrants." *State v. Poulson*, 150 Or App 164, 170, 945 P2d 1084 (1997).

Defendants argue that the information supplied by the confidential informant here failed to meet that standard

---

[3] Contrary to the majority's assertions, I do not rely only on Admire's lack of knowledge regarding the premises. I would emphasize that there is no evidence in this record that Fetsch had any recollection that there was more than one living unit in the building.

because the affidavit did not provide information on which the magistrate could assess the unnamed informant's reliability. I disagree. A search warrant affidavit that is based on hearsay must "set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained." ORS 133.545(4). Here, the affidavit states that the informant observed drugs inside defendants' residence and that one of the defendants personally told the informant that she had additional drugs. That adequately meets the ORS 133.545(4) threshold requirement of setting forth the means by which the information was obtained. *See State v. Grimes*, 135 Or App 497, 502-03, 899 P2d 1201 (1995), *rev den* 322 Or 490 (1996) (informant's knowledge of drug transaction that he witnessed was a sufficient basis for the magistrate to give weight to the informant's statements).

Similarly, there was adequate information in the affidavit from which the magistrate could ascertain the credibility of the unnamed informant. The affidavit shows that the informant had previously provided information to the police that led to the issuance of five search warrants and the arrest of seven persons. Defendants assert that the information leading to previous arrests was insufficient because it did "not inform the magistrate whether the previous information was itself accurate or reliable." As the state notes, however, the magistrate was capable of ascertaining accuracy and reliability based on the fact that the informant's information had led to past arrests. *See Grimes*, 135 Or App at 503 (fact that informant had previously provided information leading to seizure of drugs and felony arrests was sufficient to establish credibility); *see also State v. Kapsalis/ Scroggins*, 123 Or App 138, 859 P2d 1157 (1993), *rev den* 318 Or 326 (1994); *State v. Strubhar/Jackson*, 82 Or App 560, 728 P2d 928 (1986), *rev den* 302 Or 657 (1987). There was adequate information in the affidavit from which the magistrate could evaluate the credibility of the informant.

Defendants also argue that the affidavit included insufficient corroborating information. The informant here was not criminally involved with the crimes being investigated and, consequently, the court's review of the informant's reliability is subject to a less stringent standard than it would

be if the informant were connected to criminal activity. *See State v. Wheelon*, 137 Or App 63, 72, 903 P2d 399 (1995), *rev den* 327 Or 123 (1998) ("We conclude that the informants in this case were subject to the lesser showing of reliability that is required when information is supplied by disinterested citizens and that, in the light of that more lenient standard, the affidavit is sufficient."). As the trial court found, the police did corroborate the information provided by the informant by viewing the house that the informant described, confirming that someone with the name given by the informant lived there, and discovering that one of the vehicles at the house was registered to a person whose name matched the name given by the informant. The trial court did not err in denying the motion to controvert.

For the reasons discussed above, I would uphold the trial court's denial of defendants' motion to suppress and affirm the judgment. Accordingly, I respectfully dissent.

Linder, Wollheim, and Kistler, JJ., join in this dissent.